**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Douglas Lauren MARSH and Kathleen Renee Marsh, Defendants–Appellants.**

**Nos. 88–1300, 88–1306.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 17, 1989.

Decided Aug. 31, 1989.

As Amended Jan. 9, 1990.

Certiorari Denied Feb. 20, 1990.

See 110 S.Ct. 1143.

Grace C. Shohet, San Francisco, Cal., for defendant-appellant Kathleen Renee Marsh.

Sandra L. Teters, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

John M. Runfola, San Francisco, Cal., for defendant-appellant Douglas Lauren Marsh.

Before TANG, SKOPIL, and SCHROEDER, Circuit Judges.

TANG, Circuit Judge:

Douglas and Kathleen Marsh appeal their jury convictions of conspiracy to manufacture 4–methylaminorex (2–amino–4–methyl–5–phenyl–2–oxazoline), also known as, "euphoria", a schedule I controlled substance, *see* 21 C.F.R. § 1308.11(g)(5), in violation of 21 U.S.C. § 846. Douglas also appeals his conviction for attempt to manufacture euphoria. We affirm.

## FACTS AND PROCEEDINGS

On March 27, 1987, the Gainesville, Florida police executed a warrant for the arrest of Douglas Marsh at his residence. When the police executed the warrant, not only Douglas, but Kathleen Parker, who later married Douglas, was also present. After the arrest the police decided to obtain a search warrant. One officer told Kathleen that the residence would be secured and that she could either stay or leave. Also, that if she left she could take nothing that would be the object of a search. Kathleen nevertheless attempted to leave with a searchable item, a purse. A police officer thwarted this attempt and searched Kathleen's purse. That search uncovered a ledger with information about euphoria transactions.

After the search warrant arrived, officers seized from the residence a letter from Douglas which stated: "I started ice [euphoria] up again here.... If you'd like to just send me complete instructions and chemicals I'll pay the same price to make it." The officers also seized a small quantity of euphoria.

At the time of seizure, euphoria was not a controlled substance. Therefore, the government could not prosecute Douglas for its possession. Euphoria became a controlled substance on October 15, 1987, however.

On December 10, 1987, Douglas called Pfaltz & Bauer, Inc., a chemical sales business, and placed an order for various chemicals. Douglas asked that the chemicals be shipped to Melody Kronable in Atlanta, Georgia. In early January 1988, a Pfaltz & Bauer employee notified the Drug Enforcement Administration ("DEA") in Atlanta about Douglas' order.

On January 12, 1988, the DEA directed Pfaltz & Bauer to allow DEA agents in Atlanta to intercept the shipment in Atlanta so they could make a "controlled delivery" to Kronable. The agents took the package to Kronable's home and confronted her about her knowledge of the packages. Kronable cooperated with the agents and made a recorded phone call to Douglas, who was then in Oakland, Califor-

nia. In the call, Douglas agreed that the packages could be shipped to him in Oakland.

The DEA then decided to make a controlled delivery of the packages to the Marshes in Oakland. At the time of the delivery, Douglas was not in, and Kathleen signed for the packages.

The delivering DEA agent testified:

Mrs. Marsh asked me why the delivery had taken so long. And I again, in my role as a delivery person, said that, "I don't know. I'm not privy to all that information, but I would assume the packages had been labeled 'poison,'" which they were, "you can see it outside the box." And when I said that, she said, "Oh, Melody was supposed to repackage it."

DEA agents later returned with a search warrant. An agent told Kathleen that she was under arrest for attempting to manufacture a controlled substance. Kathleen responded, "We were making Roach–It, and it's not against the law."

Douglas arrived while the agents were executing the search warrant and they arrested him. Douglas also claimed that he was not doing anything illegal and that he was merely conducting research on the manufacture of "Roach–It," an insecticide.

In addition to the chemicals, the agents seized other chemical production materials. The agents also seized a Pfaltz & Bauer purchase order listing the chemicals for manufacturing euphoria and a document entitled "Research for Roach–It," which at trial a DEA forensic chemist characterized as "the entire recipe for euphoria."

The DEA chemist also testified that he was unaware of any commercially available insecticide or roach killer that used a combination of the chemicals seized. The chemist stated that the chemicals seized were for manufacturing euphoria.

The grand jury returned an indictment against the Marshes charging attempt to manufacture and conspiracy to manufacture euphoria in violation of 21 U.S.C. § 846. The government tried the Marshes jointly.

Douglas moved for a continuance on the ground that he had a new witness and needed more time to prepare his defense. The district court denied the motion. Douglas also moved for severance from Kathleen's trial. The district court denied the motion.

At trial, the court admitted the evidence seized from the Florida search and arrest: the drug ledger indicating sales of euphoria, Douglas' letter concerning the manufacture of euphoria, and a small quantity of euphoria.

In his closing argument, Kathleen's attorney referred to Douglas' invocation of his right not to testify:

She told you the truth ... Douglas told her that [the packages of chemicals delivered to Oakland were] personal items coming. Why did he do that?

> .   .   .   .   .

I'm going to tell you the simple truth of this case, ladies and gentlemen. There's only one person that could have told you, but he didn't take the stand.

The court instructed the jury to disregard this statement and not to infer guilt from Douglas' exercise of his right not to testify.

During deliberation, the jury sent the following note to the court:

Individual making "something" legal, continues making "something." Ingredients become illegal; if individual continues (*not knowing* its illegality) is he breaking law because he doesn't know of new law.

Please explain! Problem is Instruction # 7.

The district court agreed with the government and sent the jury a supplemental instruction which stated that: "Referring to your Note 1[,] ignorance of the law is no excuse." The jury returned guilty verdicts against Douglas for attempt to manufacture euphoria and conspiracy to manufacture euphoria. The jury convicted Kathleen for conspiracy only.

The district court sentenced the Marshes pursuant to the Federal Sentencing Guidelines, authorized by 28 U.S.C. § 994. The

Marshes contested the probation officer's conclusion that euphoria is analogous to amphetamine in determining the base offense level for euphoria. The court ordered an evidentiary hearing to ascertain which drug listed in section 2D1.1 of the Guidelines is most analogous to euphoria. Based upon the expert testimony given at the evidentiary hearing, the court agreed with its probation officer and concluded that amphetamine is the drug most analogous to euphoria.

## DISCUSSION

### A. Kathleen's Arguments on Appeal

#### 1. *Admission of the "Florida evidence"*

■ Kathleen argues that the district court erred when it admitted the Florida evidence because (1) the admission violated Federal Rule of Evidence Rule 404(b) because it was prior similar acts evidence; (2) the evidence was irrelevant as proof of conspiracy; (3) even if relevant, the prejudicial impact of the evidence outweighed its probative value; and (4) the district court should have given an instruction making the evidence admissible only against Douglas. We disagree. Our review is for abuse of discretion. *United States v. Laurins*, 857 F.2d 529, 541 (9th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3215, 106 L.Ed.2d 265 (1989).

"The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988). However, even if probative on a material issue other than character, the evidence must still be excluded if the potential for unfair prejudice substantially outweighs its probative value. *See* Fed.R.Evid. 403.

We conclude there was no abuse of discretion. The drug ledger was probative of Kathleen's knowledge. Kathleen argued at trial that Douglas did not reveal his drug manufacturing activities to her. The drug ledger seized from her purse after the agents explicitly instructed Kathleen to re-

moval only personal items contradicted this defense. The probative value of this evidence thus outweighs whatever prejudice may have occurred.

### 2. *Omission of Instruction Regarding Guilt by Association*

Kathleen contends that the district court erred when it omitted an instruction to the jury that a conspiracy is not guilt by association. Kathleen concedes that the district court gave an oral instruction, but she asserts that a written instruction should have been included.

Federal Rule of Criminal Procedure Rule 30 requires timely objections to jury instructions: "No party may assign as error any portion of the charge or omission unless that party objects thereto before the jury retires to consider its verdict, stating directly the matter to which that party objects and the grounds of the objection." When there is no objections to jury instructions at the time of trial, we will employ a plain error standard of review. *See United States v. Kessi*, 868 F.2d 1097, 1102 (9th Cir.1989). Plain error is found only in exceptional circumstances. *Id.*

■ We conclude that Kathleen waived this claim because she neither requested a guilt by association instruction nor objected to the omission of such a written instruction. Moreover, we conclude there was no plain error. The district court gave the instruction orally. This is not an exceptional case.

### 3. *Sufficiency of Evidence*

Kathleen argues that the evidence fails to support her conspiracy conviction.

In assessing the sufficiency of evidence, we determine whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Calabrese*, 825 F.2d 1342, 1348 (9th Cir.1987).

The essential elements of a conspiracy are (1) an agreement to engage in criminal activity, (2) one or more overt acts to implement the agreement, and (3) the requisite intent to commit the substantive crime. [Citation omitted.] Once the existence of a conspiracy is shown, evidence establishing beyond a reasonable doubt a knowing connection of the defendant with the conspiracy, even though the connection is slight, is sufficient to convict [a person] of knowing participation in the conspiracy.

*United States v. Meyers*, 847 F.2d 1408, 1412–13 (9th Cir.1988).

■ We conclude sufficient evidence supports Kathleen's conspiracy conviction. A rational jury could have found beyond a reasonable doubt that a conspiracy existed: (1) Kathleen agreed to help Douglas manufacture euphoria, a criminal activity, (2) by accepting delivery, Kathleen committed an overt act to implement the agreement, and (3) Kathleen intended to help in the manufacture of euphoria. This evidence also establishes that Kathleen had at least a knowing connection to the conspiracy.

### B. Douglas' Arguments on Appeal

### 1. *Continuance*

Douglas contends the district court abused its discretion when it denied his motion for a continuance. Douglas claimed he needed a continuance to locate witnesses he only recently told his attorney about. The contention fails.

"Generally, a decision to grant or deny a continuance is reviewed for an abuse of discretion." *United States v. Studley*, 783 F.2d 934, 938 (9th Cir.1986).

■ We conclude there was no abuse of discretion because Douglas' request for the continuance lacked adequate support. Douglas had months to produce the witnesses. He has failed to explain adequately why he could not locate the witnesses in that time. Moreover, part of the delay stemmed from Douglas' own unwillingness to tell his attorney about the witnesses.

### 2. *Severance*

Douglas contends the district court erred when it refused to sever his trial from Kathleen's. He contends that her antago-

nistic defense (that he never told her what they were making) prejudiced his interests. We disagree. Our review is for an abuse of discretion. *United States v. Patterson,* 819 F.2d 1495, 1501 (9th Cir.1987).

We must determine whether "joinder was so prejudicial that the trial judge was compelled to exercise his discretion to sever." *United States v. Lewis,* 787 F.2d 1318, 1321, *modified on other grounds,* 798 F.2d 1250 (9th Cir.1986), *cert. denied,* — U.S. —, 109 S.Ct. 1169, 103 L.Ed.2d 227 (1989). The defendant bears the burden of showing manifest prejudice. *Id.* To have obtained a severance on the basis of antagonistic defenses, Douglas must have shown that "the acceptance of one party's defense will preclude the acquittal of the other party." *United States v. Ramirez,* 710 F.2d 535, 546 (9th Cir. 1983).

We conclude there was no abuse of discretion because Kathleen's defense did not prevent Douglas' acquittal. Both the Marshes claimed they were not making a controlled substance, but rather a legal roach killer. This common defense could not have prevented Douglas' acquittal.

### 3. *Counsel's Comment in Closing Argument*

Douglas contends that the district court erred when it did not grant a mistrial based on Kathleen's attorney's closing argument. We disagree. Our review is for abuse of discretion. *See United States v. Makhlouta,* 790 F.2d 1400, 1403 (9th Cir. 1986).

A trial judge may cure the effect of improper comments " 'by admonishing counsel to refrain from such remarks or by giving appropriate curative instructions to the jury.' " *United States v. Endicott,* 803 F.2d 506, 513 (9th Cir.1986) (quoting *United States v. McKoy,* 771 F.2d 1207, 1213 (9th Cir.1985)). Even when no curative instruction is given, we will not reverse a defendant's conviction if substantial, independent and credible evidence of the defendant's guilt overwhelms whatever incriminating aspects inadmissible statements may have had in isolation. *See United*

*States v. Jarrad,* 754 F.2d 1451, 1457 (9th Cir.), *cert. denied,* 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985).

We conclude that the district court did not abuse its discretion because it gave a cautionary instruction which cured any possible prejudice to Douglas. Even without this instruction, we conclude that given the overwhelming evidence against Douglas, reversal would not be warranted for this isolated statement.

### C. Joint Arguments on Appeal

#### 1. *Ignorance of the Law Instruction*

The Marshes argue that the district court's supplemental instruction responding to the jury note was incorrect because (1) the government was required to prove that the Marshes knew that the manufacture of euphoria involved an illegal controlled substance; and (2) even if correct, the supplemental instruction created confusion because it conflicted with the previous instructions.

"We examine ' "whether or not the instructions taken as a whole were misleading or represented a statement inadequate to guide the jury's deliberations." ' " *Kessi,* 868 F.2d at 1101 (quoting *United States v. Shortt Accountancy Corp.,* 785 F.2d 1448, 1454 (9th Cir.) (quoting *Stoker v. United States,* 587 F.2d 438, 440 (9th Cir. 1978)), *cert. denied,* 478 U.S. 1007, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986))). "In reviewing jury instructions, we give the trial judge 'substantial latitude' so long as the instructions 'fairly and adequately cover the issues presented.' " *United States v. Bordallo,* 857 F.2d 519, 526 (9th Cir. 1988) (quoting *United States v. Abushi,* 682 F.2d 1289, 1299 (9th Cir.1982), *amended,* 872 F.2d 334 (9th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 71, 107 L.Ed.2d 38 (1989). " '[A] single instruction to the jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.' " *Id.* (quoting *United States v. Park,* 421 U.S. 658, 674, 95 S.Ct. 1903, 1912, 44 L.Ed.2d 489 (1975) (quoting *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973))).

" 'Jury instructions, even if imperfect, are not a basis for overturning a conviction absent a showing they constitute an abuse of the trial court's discretion.' " *Id.* (quoting *United States v. Green,* 745 F.2d 1205, 1209 (9th Cir.1984)).

[█ The government was not required to prove that the Marshes knew that euphoria was a controlled substance. In construing criminal statutes, we have often held that one may "knowingly" commit criminal acts without knowing that the acts are criminal. *See, e.g., United States v. Sherbondy,* 865 F.2d 996, 1002 (9th Cir. 1988). Thus, the district court's supplemental instruction was not incorrect.

Moreover, any conflict between the supplemental instruction and the original Instruction Number 7 could only have benefited the Marshes.[1] Instruction Number 7 implies, correctly, that the Marshes could have knowingly attempted or conspired to manufacture 4-methyl aminorex, even if they did not know exactly what it was, as long as they knew that it was a controlled substance. *See, e.g., United States v. Lopez-Martinez,* 725 F.2d 471, 474-75 (9th Cir.1984). The converse of that proposition is, as the supplemental instruction implies, incorrect. The Marshes could knowingly attempt or conspire to manufacture 4-methyl aminorex even if they did not know that it was a controlled substance. Although the jury might have been confused about this until it received the supplemental instruction, that confusion could only have benefited the Marshes. There was therefore neither harm nor error from the challenged instructions.

## 2. Sentencing

█ The Marshes contend that the Federal Sentencing Guidelines for "attempt and conspiracy" controlled the sentencing of euphoria. Therefore, the district court erred when it based its sentence on what drug was most analogous to euphoria. We disagree.

We conclude that no specific guideline had been promulgated for euphoria. The guideline for "attempts and conspiracies," Guideline § 2D1.4, only instructs the sentencing judge to apply the same sentence for an attempt or conspiracy as he or she would apply if the underlying substantive offense had been committed. Thus, this guideline is irrelevant to the decision of what sentence ought to apply to euphoria because this guideline assumes that the underlying offense carries an established penalty. Such is not the case here; there is no established guideline for euphoria.

█ In the absence of a specific guideline, the district court properly admitted expert testimony to determine what drug was most analogous to euphoria. *See* Guideline § 2X5.1[2].

AFFIRMED.

---

1. Instruction Number 7 provided:
   In order for a defendant to be found guilty of attempting to manufacture and conspiracy to manufacture the Schedule One controlled substance Euphoria ... the government must prove that a defendant knowingly attempted to manufacture Euphoria. It does not matter whether a defendant knew that the substance would be Euphoria or ice. It is sufficient that he or she knew that it was some kind of controlled substance, that is, a prohibited drug.

2. Guideline § 2X5.1 provides in relevant part that:
   If the offense is a felony or Class A misdemenor for which no guideline expressly has been promulgated apply the most analogous guideline.