77 F.3d 491
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
George Paul MOSS, Defendant-Appellant.
 No. 95-30066.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 4, 1995.
Decided Feb. 13, 1996.
 
 1
 Before: D.W. NELSON and NOONAN, Circuit Judges, WARE, District Judge[1].
 
 MEMORANDUM[2]
 
 2
 George Paul Moss ("Moss") was convicted by a jury of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846 and distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1). He appeals his conviction on the bases that evidence regarding his status as a gang member was improperly admitted at his trial, that the district court committed reversible error with respect to five evidentiary rulings and that his right to a speedy trial was violated. We affirm.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 3
 In January of 1992 Tacoma police officers arrested Mr. Edwin Humphrey and charged him with possession of crack cocaine. In July of 1992, a special drug task force hired Humphrey to make crack cocaine purchases in exchange for possible avoidance of a 15 year prison sentence. Humphrey knew at least two crack cocaine sellers, Vincent Gamboa, who Humphrey knew only as "Vince" or "Bone" and Vince's brother, Dalton Gamboa, who Humphrey knew only as "Andre" or "Dre".
 
 
 4
 In late July of 1992, Humphrey told Vince that he wanted to buy some crack cocaine. Vince told Humphrey to wait because some "homeboys" were arriving from California the next day with some cocaine. Vince told Humphrey to page him the next day, July 28, 1992. When Humphrey paged Vince, Vince told him to come to his apartment at 1829 S. 93rd Street, Apt. D. When Humphrey arrived at the apartment he was introduced to Moss, who went by the name "G", Jahmal Blackburn, who went by the name "JB" and a person known as "Tonka". Humphrey saw about three ounces of rock cocaine that had been cut up and placed in film canisters. Vince told Humphrey that the cocaine came from California. Humphrey reported all this information to his "handler", Officer Ringer.
 
 
 5
 On August 7, 1992, Moss sent a letter to an inmate at California State Prison in Los Angeles. In the letter, which was admitted at Moss's trial over his objection, he wrote that he and the "hommies" were no longer in L.A. and that he, "V Bone", "Emmo", "E.T.", "Tunku", and "Dalton" were in Tacoma, Washington and "doing whatever it takes to get our family together". He also wrote that "[a]t the moment we're discussing ways of having Tacoma & Portland sold up." The letter also included pictures of Moss, the Gamboa brothers and Blackburn taken at the 93rd Street apartment.
 
 
 6
 Humphrey made a total of 4 controlled buys for the task force between August and October of 1992. All telephone conversations which set up each of the sales were recorded in the F.B.I. offices. Humphrey was paid a total of $6,000.00 by the task force for his services. Each of the buys is set forth separately below.
 
 August 19, 1992
 
 7
 During a recorded phone conversation, Humphrey and Vince arranged for Humphrey to purchase three ounces of rock cocaine at Dalton Gamboa's apartment located at 5111 S. 12th Street, Apt. 19. Humphrey then went to the apartment, where surveillance agents were placed, and purchased three ounces of crack cocaine from Vincent for $2,700.00 cash provided by the F.B.I. During the sale, Moss was in the kitchen "cooking" cocaine and discussed with Humphrey the cooking process. After Humphrey left the apartment, agents photographed Moss leaving the apartment.
 
 
 8
 On August 25, 1992, surveillance agents saw Moss leave the apartment in a Buick Le Sabre station wagon registered to Dalton Gamboa. The officer requested that a patrol car stop Moss for identification. When Moss was stopped, he told Officer Murphy Kahuhu that he did not have his drivers license with him but provided a number and said that it was a New York drivers license number. He identified himself as George Paul Moss and gave an address at 12th and Sprague Avenue and said that he was staying with his cousin Dalton, who lived at 1628 93rd Street, Apt. D. A subsequent check of the drivers license number revealed that the number was Moss's California Drivers license.
 
 September 3, 1992
 
 9
 On September 3, 1992, agents paged Dalton Gamboa and Jahmal Blackburn returned Humphrey's call at the F.B.I. office. Humphrey said he wanted a "zone" (ounce) of rock cocaine and that no one had responded to his page to a pager listed to Blackburn. Blackburn told Humphrey to call the number again and add "911", which means that the caller was in a big hurry to get cocaine. Humphrey did so and Moss returned his call. When Humphrey told him that he wanted a zone, Moss put Vince on the phone and Vince told Humphrey to come to the house and get it.
 
 
 10
 Humphrey went to the apartment and met Moss. When Humphrey asked about Vince, Moss said that Vince was gone but that he (Moss) was handling it. Humphrey then bought an ounce of rock cocaine from Moss for $900.00.
 
 September 14, 1992
 
 11
 On September 14, 1992, in response to a page, Blackburn called Humphrey. Humphrey said he wanted $300.00 worth of "double-up". A "double-up" represented a sale of a quantity of rock cocaine that was capable of being cut into smaller pieces and sold at twice the price of purchase. Humphrey went to the apartment and purchased $300.00 worth of "double-up". Prior to Humphrey's arrival, surveillance agents saw Moss, Vince Gamboa, Dalton Gamboa and Blackburn standing around the trunk of a car. Humphrey and Vince then entered the apartment and Moss and Blackburn left the parking lot.
 
 October 29, 1992
 
 12
 On October 29, 1992, Blackburn responded to Humphrey's page and arranged a $300.00 sale of cocaine. Humphrey went to the apartment and made the purchase. As he was leaving, Humphrey saw Moss, Vince Gamboa and another person. Surveillance agents saw Moss enter the apartment shortly before Humphrey arrived and leave shortly after Humphrey left.
 
 Post-Purchase Events
 
 13
 On February 17, 1993, Moss was indicted in Count I with conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and § 841(b)(1)(A) and in Counts II and III with distribution of cocaine base on August 19, 1992 and September 3, 1992, respectively, in violation of 21 U.S.C. § 841(a). After a two day jury trial on October 24 and 25, 1994, Moss was found guilty on all counts. On February 10, 1995, he was sentenced to 168 months in prison on all three counts to be served concurrently followed by a five year period of supervised release. On February 17, 1995, Moss timely filed his notice of appeal.
 
 STANDARD OF REVIEW
 
 14
 The decision of the district court to deny a motion for a mistrial is reviewed for an abuse of discretion. U.S. v. Winslow, 962 F.2d 845 (9th Cir.1992). A reviewing court cannot reverse unless it is clear that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. United States v. Plainbull, 957 F.2d 724, 725 (9th Cir.1992).
 
 DISCUSSION
 A. Gang-related Testimony
 
 15
 Moss argues that the district court erred by denying his motion for a mistrial based on the admission of testimony which implied that Moss was a gang member. During the prosecution's case, correctional officer Everett Hooker was questioned concerning a letter which Moss had written to a California State Prison inmate on August 7, 1992. Hooker testified that the letter and photographs were sent to him on the basis that the pictures were possibly gang related. Hooker stated that he examined the pictures and "saw that there were several pictures of black males, possibly gang members." Defense counsel then objected to the testimony and the court sustained the objection. Hooker then testified that the letter and pictures were returned for circulation.
 
 
 16
 During a recess, defense counsel moved for a mistrial on the basis that Hooker's testimony was extremely prejudicial and irrelevant to any issue in the case. The prosecutor then noted that defense counsel had failed to request that the testimony be stricken and that there would be no objection to such an instruction. The court then denied the motion for a mistrial and instructed the jury that they must not consider testimony that has been excluded or stricken. Defense counsel did not request any additional instructions.
 
 
 17
 Moss relies on the holding in U.S. v. Dickens, 775 F.2d 1056 (9th Cir.1985) to support his argument that the government improperly drew a connection between Moss and a gang without foundation and for no evidentiary purpose. In Dickens, the court held that prejudicial error occurred when cross-examination of a witness was permitted regarding Defendant's association with a drug ring called the "mob". The court noted that there was no direct evidence linking defendant to the mob nor had the prosecution contended that the mob evidence was probative of any of the crimes charged.
 
 
 18
 We find that Dickens is not applicable to the present case since the prosecution in this action did not seek to elicit any information relating to Moss's alleged affiliation with any gang. The statement uttered by Officer Hooker was unsolicited and nonresponsive. The jury was instructed not to consider the testimony and it was not referred to again during the course of the trial. Based on the strength of the government's case against Moss and the fleeting statement made by Officer Hooker, any prejudice to Moss was minimal and was cured by the court's instructions. Cf. United States v. Marsh, 894 F.2d 1035 (9th Cir.1990) ("Even when no curative instruction is given, we will not reverse a defendant's conviction if substantial, independent and credible evidence of the defendant's guilt overwhelms whatever incriminating aspects inadmissible statements may have had in isolation").
 
 B. Cumulative Error
 
 19
 Moss next challenges the district court's rulings as to four additional evidentiary issues on the basis that the denial of all four issues constitutes reversible error. U.S. v. Green, 648 F.2d 587 (9th Cir.1981).
 
 1. Evidence of Custody
 
 20
 During the government's case, Agent Aukland testified and was questioned regarding the timing of Mr. Moss's arrest with respect to this investigation. Defense counsel objected and the court inquired as to the relevancy of the question. The government responded that it was simply asking about the timing of the event. The court then permitted the question and the officer responded that he became aware on September 8, 1993 that Mr. Moss was in custody. The government then asked the officer what steps he took in response to such awareness and Aukland answered that Moss was in custody "out of our district". Defense counsel objected and the court sustained the objection. Defense counsel then moved for a mistrial at the conclusion of Aukland's testimony on the basis that the testimony clearly inferred that Moss had been arrested for another offense in another jurisdiction and that the prosecutor had intended to solicit such a response. The prosecutor argued that he merely intended to explain the lapse of time between Moss's arrest and his trial and that he had told Aukland that he intended to stay clear of the arrest in another jurisdiction. The court denied Moss's motion for a mistrial.
 
 
 21
 Moss argues that the motion should have been granted because the jury was improperly permitted to infer that Moss had been arrested on another charge in another district. However, the testimony makes no reference to any charge other than the charges which were tried. The testimony was simply that Moss was in custody "out of our district."
 
 2. Evidence of August 25, 1994 Traffic Stop
 
 22
 Moss next argues that the court improperly permitted Officer Kahuhu to testify regarding the identification stop of Moss. Moss contends that the information he gave to the Officer was not relevant to any issue in the case and only served to place him in a bad light before the jury. Moss did not object to the admission of the testimony at the trial. Appellee argues that the testimony was relevant to establish Moss's consciousness of guilt and his involvement in the drug enterprise. However, based on the strength of the government's case, any prejudice to Moss was minimal and insufficient to warrant reversal of his conviction. Cf. United States v. Marsh, 894 F.2d 1035 (9th Cir.1990).
 
 
 23
 3. Admission of Co-conspirator's Post-arrest Statements
 
 
 24
 The court also admitted the post-arrest statements of co-conspirator Vince Gamboa after finding that Gamboa was unavailable to testify since he would invoke the fifth amendment if he were called to the stand to testify. The court found that the statements were admissible as statements against Gamboa's penal interest. Gamboa told the police, in response to a question about his downfall, that his downfall had been getting involved with other people in August of 1992.
 
 
 25
 Moss argues that this statement is inadmissible since it implicates him, thereby exceeding the scope of Evidence Rule 804(b)(3). The statement, however, makes no mention of any particular person and Gamboa did not identify Moss as being involved with him.
 
 
 26
 4. Admission of Unauthenticated Letter to Inmate
 
 
 27
 Moss also contends that the letter to the inmate should not have been admitted into evidence since it was not authenticated and was not relevant to any issue in the case. Rule 901(b)(4), Fed.R.Evid., provides that documents may be authenticated on the basis of their "appearance, contents, substance, internal pattern, or other distinctive characteristics taken in conjunction with circumstances."
 
 
 28
 Here, the envelope in which the letter was sent bore Moss's name and showed a return address of 1829 S. 93rd St., Apt. D, Tacoma, Washington. The letter also included photographs of Moss and was signed "AS SALALM ALAKIUM", under which was written the letter "G". The contents of the letter clearly referred to the drug conspiracy for which Moss was charged. The letter was properly authenticated and admitted into evidence.
 
 C. RIGHT TO A SPEEDY TRIAL
 
 29
 Finally, Moss contends that his sixth amendment right to a speedy trial was violated as a result of a six week delay by the federal government in transferring him to federal custody after he served his time in California state court. Moss first raised this issue three months after his trial, just before his sentencing. Title 18 U.S.C. § 3162(a)(2) provides that "[f]ailure of the defendant to move for dismissal prior to trial * * * shall constitute a waiver of the right to dismissal under this section." Therefore, we find that Moss has waived his right to raise this argument on appeal.
 
 
 30
 AFFIRMED.