UNITED STATES of America,
Plaintiff-Appellee,

v.

Kenny DICKENS and Melvin Lester,
Defendants-Appellants.

Nos. 84–1201, 84–1202.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 12, 1985.

Decided Nov. 4, 1985.

Sanford Svetcov, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

David B. Goodwin, San Francisco, Cal., for Dickens.

Richard B. Mazer, San Francisco, Cal., for Lester.

Before HUG, SCHROEDER, and HALL, Circuit Judges.

SCHROEDER, Circuit Judge.

Defendants Kenny Dickens and Melvin Lester appeal their convictions of possession of heroin with intent to distribute under 21 U.S.C. § 841(a)(1) and conspiracy to possess and distribute heroin under 21 U.S.C. § 846(a). We find prejudicial error in the district court's allowance of cross-examination directed at Lester's affiliation

with an East Oakland drug ring called "the mob."

This case arose from an incident on February 17, 1984. Oakland police approached a car on a side street. The appellants were in the front seat and LaVonne Henderson, a juvenile, sat in the back. The police testified that as they approached, they flashed their badges and the defendants fled in the car. The defendants' testimony was that the police were not in uniform, and they brandished large guns which frightened the defendants. In either event, a high speed chase ensued.

The police testified that at one point during the chase, they saw Lester, the driver, attempt to throw out a plastic bag, but that the car's swerving prevented him from doing so. Once the car regained its equilibrium, the police said, Dickens, Lester's co-defendant, successfully tossed the bag out from the passenger side. After the arrest, the police testified, they retrieved from the sidewalk a bag that contained heroin in 110 balloons. Defendants denied there ever was a bag. When arrested, Lester had a ring valued between $2000 and $5000.

During cross-examination of Lester, the prosecutor asked whether he had been given the ring by someone named Felix Mitchell. Lester's denials prompted further questions about Lester's relationship with Mitchell and Mitchell's "business." When Lester denied that Mitchell led a group called "the mob," the government asked Lester about an earlier trial of Lester's brother, at which, according to the prosecutor, a witness identified Lester as "belonging to 'the mob.'" After Lester denied the identification, the prosecutor pursued further questions about Mitchell, including questioning which brought out that the "mob" was in the business of selling drugs.

Defendants made all appropriate objections and moved for a mistrial contending, as they do now on appeal, that the cross-examination discrediting defendants by associating them with organized crime should not have been permitted.[1] The government

---

1. The relevant portion of the cross-examination is as follows:

[Mr. Nerney]: Sir, I show you a ring, Exhibit number five. Isn't it a fact that ring was given to you by Felix Wayne Mitchell?
Mr. Hong: Objection, your Honor; it's irrelevant.
The Court: Overruled.
[Mr. Nerney]: Isn't that a fact, that you got that ring from Felix Wayne Mitchell?
A. No, it isn't. No, sir.
Q. Isn't it a fact you are a friend of Felix Wayne Mitchell?
A. No, Sir.
Q. Isn't it a fact you have been visiting Mr. Felix Mitchell in San Francisco County Jail?
Mr. Gould: Objection, irrelevant.
The Witness: A. No, Sir.
* * * * * *
[Mr. Nerney]: Isn't it a fact Mr. Mitchell leads a group called the mob?
Mr. [Gould]: Objection, your Honor.
The Witness: A. No, Sir.
* * * * * *
[Mr. Nerney]: What business is Felix Wayne Mitchell in?
A. I don't know.
* * * * * *
Q. Well, isn't it a fact that you were in court, sir, when I was the lawyer prosecuting your brother and Mr. McGill?
A. Yes, Sir.

Q. And isn't it a fact all during that trial we talked about Felix Wayne Mitchell and a group called the mob?
A. Yes, Sir.
Q. And isn't it a fact I had you stand up when the witness identified you as belonging to the mob?
A. No, Sir.
Mr. Gould: Excuse me, your Honor. Your Honor, I have a motion to make at the side bar.
The Court: Make it later. Overruled.
Mr. Gould: I have a motion to make right now, your Honor.
The Court: Not now, Counsel.
* * * * * *
[Mr. Nerney]: So you know what Felix Wayne Mitchell does for a living?
A. I am not into that. I don't know.
Q. Well, didn't you hear all the witnesses talk about Felix Wayne Mitchell.
A. Okay. I am sorry. As far as the court, what I recall, yes.
Q. What did you hear about Felix Mitchell when you were in court?
A. Something about a mob.
Q. What does the mob do for business?
A. They say sell drugs.
* * * * * *
Q. Well, the fellow in the back seat [of your car, LaVonne Henderson] was Felix Wayne Mitchell's nephew; wasn't he?
A. Yes, Sir.

admits that the prosecutor's reference to Lester's identification at his brother's trial was premature, but contends that the remainder of the questioning about Mitchell and "the mob" was appropriate.

■ A defendant's guilt may not be proven by associating him with unsavory characters. *United States v. Pritchett,* 699 F.2d 317, 319–20 (6th Cir.1983); *United States v. Romo,* 669 F.2d 285, 288 (5th Cir.1982); *United States v. Shelton,* 628 F.2d 54, 56–57 (D.C.Cir.1980). It is error for the prosecutor to draw a connection to a group engaged in criminal activity when it serves no purpose and is without foundation. *See United States v. Marques,* 600 F.2d 742, 749 (9th Cir.1979), *cert. denied,* 444 U.S. 1019, 100 S.Ct. 674, 62 L.Ed.2d 649 (1980); *United States v. Love,* 534 F.2d 87, 88–89 (6th Cir.1976). No direct evidence was offered or admitted which connected Lester or Dickens with "the mob," nor is it contended that such evidence has any probative value in proving commission of the crimes charged. *See* Fed.R.Evid. 404(b); *United States v. Bailleaux,* 685 F.2d 1105, 1109 (9th Cir.1982).

■ The prosecution argues that its questions were probative as impeachment for the purpose of undermining credibility. Fed.R.Evid. 608(b) controls the extent of cross-examination, allowing examination into "specific instances" of a witness' conduct if probative of the witness' truthfulness or untruthfulness.[2] The extent of such questioning is a matter within the district court's discretion. *See United States v. Miranda-Uriarte,* 649 F.2d 1345, 1353–54 (9th Cir.1981); *United States v. Palmer,* 536 F.2d 1278, 1282 (9th Cir.1976). Evidence of association with others affil-

iated with the "mob," even though the others may have been engaged in criminal activity, did not bear on Lester's truthfulness.

Even if Lester had actually previously been convicted of a drug related crime, the conviction would have been admissible for credibility impeachment purposes only if the crime had been punishable by more than one year and after the district court had carefully weighed its probative value against prejudice. Fed.R.Evid. 609. Lester's association with a group engaged in criminal conduct is not itself a crime, and is, standing alone, not admissible for credibility impeachment purposes under Fed.R. Evid. 609.

The government relies upon *United States v. Able,* —— U.S. ——, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984), where the Supreme Court held that cross-examination of a witness's membership in a group pledged to lie was permissible in order to show bias and motive to commit perjury. The prosecutor in *Able* brought out in cross-examination of a defense witness that both the witness and the defendant were members of a "secret prison gang that required its members always to deny the existence of the organization and to commit perjury, theft, and murder on each member's behalf." *Id.* 105 S.Ct. at 467. The Court held that the common membership of the defendant and the witness in a group pledged to protect each other by any available means showed "a powerful motive to slant his testimony towards [the defendant], or even commit perjury outright." *Id.* at 470. *See also United States v. Sommerstedt,* 752 F.2d 1494, 1499 (9th Cir.1985) (holding that evidence that defense witnesses were members of

---

\* \* \* \* \* \*

Q. Isn't it a fact that your co-defendant, Mr. Dickens, lives in the house owned by Felix Wayne Mitchell's mother?

A. I am not aware of that. I don't know where he lives.

R.T. at 1–164 to 1–168.

**2.** Fed.R.Evid. 608(b) reads in relevant part:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting his

credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

the same organization of tax protesters as defendant was properly admitted to show bias).

The cross-examination in this case shows nothing of the sort. Defendant's association with "the mob" does not demonstrate any motive for lying or indicate any bias in connection with this trial. Indeed, since it was the defendant himself who was being cross-examined, rather than a witness, as in *Able*, the defendant's bias in his own behalf was self-evident. That the witness in *Able* was only a witness and not the defendant was part of the rationale of the Supreme Court decision. *Id.* 105 S.Ct. at 469.

■ The government also suggests that Lester opened the door on direct examination to inquiry about Mitchell's "business" when on direct, he denied dealing in drugs. But Lester never mentioned Mitchell or "the mob" on direct examination. It was error to permit the entire line of questioning concerning "the mob."

■ "We reverse [a conviction] for non-constitutional error only if it was more probable than not that the error affected the verdict." *United States v. McAllister*, 747 F.2d 1273, 1277 (9th Cir.1984). With respect to the issue of prejudice, we observe that the trial was very short, lasting only a day and a half. The defendants' testimony was corroborated by Henderson, the third person in the car. There were no fingerprints or other physical evidence linking appellants to the contraband, so the case rested solely on the credibility of the witnesses. The questioning was prejudicial error as to both defendants because the case for and against both was identical.

Since we conclude that the convictions must be reversed, we need not address appellants' contentions with respect to Lester's testifying about a prior juvenile conviction. The issue is not likely to recur in a new trial.

We have reviewed defendants' other contentions and they are without merit.

Reversed and remanded.