**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lorenzo GARCIA, Defendant–Appellant.**

No. 92–10285.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 14, 1993.

Decided Oct. 20, 1993.

---

886

Phil Noland, Phoenix, AZ, for defendant-appellant.

Elizabeth M. Overholt, Asst. U.S. Atty., Phoenix, AZ, for plaintiff-appellee.

Before: CHOY, BROWNING, and CANBY, Circuit Judges.

CHOY, Circuit Judge:

Lorenzo Garcia appeals his jury conviction for aggravated sexual abuse of a child. He requests that his conviction be vacated and his case remanded for a new trial, arguing (1) that the district court violated his Sixth Amendment right to confrontation by allowing the minor victim to testify at trial via two-way closed circuit television, and (2) that the district court erroneously refused to instruct the jury regarding abusive sexual contact as a lesser-included offense of aggravat-

ed sexual abuse. We find these arguments without merit and we affirm.

## I. PROCEDURAL BACKGROUND

Defendant Lorenzo Garcia was indicted on four counts of aggravated sexual abuse of a child in violation of 18 U.S.C. §§ 2241(c) and 1153. Prior to trial, the government made a motion to allow Jane Doe, the minor victim named in the indictment, to testify via two-way closed circuit television pursuant to 18 U.S.C. § 3509(b)(1). After several hearings, the trial court granted the government's motion. The victim testified at trial via closed circuit television and the jury convicted Garcia of all four counts of aggravated sexual abuse. Garcia made a motion for a new trial, which the district court denied. Garcia was sentenced to 96 months in prison to be followed by a five year term of supervised release.

## II. FACTUAL BACKGROUND

Garcia is a Navajo Indian. He is mildly retarded and at the time of the incidents lived with his mother, Iris Garcia, on a Navajo reservation. Jane Doe is the defendant's niece. The allegations of sexual abuse arose after a conversation between Jane Doe and Rita Begay, Jane's aunt, concerning the facts of life. During this conversation, Jane told her aunt that "someone was already doing it to her."

Following the government's motion for the use of two-way closed circuit television, the district court conducted hearings to determine whether Jane should be permitted to testify out of the physical presence of the defendant. The district court questioned Jane in chambers. Jane expressed fear of Garcia, although she gave contradictory answers regarding whether she could testify at trial in front of him. Several family members testified at the hearings that Jane was shy and would be afraid to talk in front of the defendant. There was also some testimony suggesting that family members had pressured Jane not to testify.

Delphine Clashin, a children's mental health specialist who had counseled Jane, testified that Jane was very shy and that she

was frightened and ashamed when talking about the abuse. Over the defendant's objection, Ms. Clashin testified that in her expert opinion Jane would be emotionally traumatized by the defendant's appearance in the courtroom and that using closed-circuit TV would lessen the trauma.

Dr. Herschel Rozensweig, a psychiatrist specializing in children and adolescents, also testified as an expert witness. Dr. Rozensweig had not met Jane and he testified in response to hypothetical questions concerning a child in Jane's situation. Dr. Rozensweig testified that a shy, Native American, eleven-year old female who was a victim of sexual abuse by her uncle over a period of two years would be very hesitant to talk about the abuse. According to Dr. Rozensweig, if family members discourage the child from testifying, that "makes testifying extraordinarily difficult." Dr. Rozensweig testified that it was quite possible that a child fitting the above description would be traumatized by testifying in the courtroom and that testifying via two-way closed circuit television would be less stressful.

Jane was eleven when she testified at trial via two-way closed circuit television. Jane testified about several occasions when the defendant was "nasty" to her and put his penis inside her. Jane also testified that sex with the defendant included kissing and touching.

## III. DISCUSSION

### A. Sixth Amendment Right to Confrontation

Garcia argues that Jane Doe's testimony via two-way closed circuit television violated his Sixth Amendment right to confrontation because the district court did not make findings sufficient to authorize the use of that procedure.

In *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the Supreme Court considered whether the Sixth Amendment Confrontation Clause was violated by the use of one-way closed circuit television to allow a child witness in a child abuse case to testify at trial outside of the defendant's presence. The Supreme Court ex-

plained that "our precedents establish that 'the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial,' a preference that 'must occasionally give way to considerations of public policy and the necessities of the case.' " *Id.*, at 849, 110 S.Ct. at 3165 (emphasis in original) (citations omitted). The Court held that "the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant." *Id.*, at 855, 110 S.Ct. at 3169.

Prior to using such a special procedure, the State must make an adequate showing of necessity. In determining necessity, the inquiry must be case-specific: the trial court must determine whether the procedure requested "is necessary to protect the welfare of the particular child witness who seeks to testify." *Id.* Furthermore, the trial court must find that the child witness would be traumatized by the defendant's presence, not by the courtroom generally. *Id.*, at 856, 110 S.Ct. at 3169. Finally, the trial court must find that the emotional distress suffered by the child witness in the defendant's presence rises to a level that is more than *de minimis*. *Id.*

After the Supreme Court's decision in *Craig*, Congress enacted 18 U.S.C. § 3509, which provides for alternative procedures to live in-court testimony. Title 18 U.S.C. § 3509(b)(1) addresses the use of two-way closed circuit television to present a child's live testimony. It states in part:

(B) The court may order that the testimony of the child be taken by closed-circuit television as provided in subparagraph (A) if the court finds that the child is unable to testify in open court in the presence of the defendant, for any of the following reasons:

(i) The child is unable to testify because of fear.

(ii) There is a substantial likelihood, established by expert testimony, that the child would suffer emotional trauma from testifying.

(iii) The child suffers a mental or other infirmity.

(iv) Conduct by defendant or defense counsel causes the child to be unable to continue testifying.

(C) The court shall support a ruling on the child's inability to testify with findings on the record. In determining whether the impact on an individual child of one or more of the factors described in subparagraph (B) is so substantial as to justify an order under subparagraph (A), the court may question the minor in chambers, or at some other comfortable place other than the courtroom, on the record for a reasonable period of time with the child attendant, the prosecutor, the child's attorney, the guardian ad litem, and the defense counsel present.

18 U.S.C. § 3509.

### 1. *Constitutionality of 18 U.S.C. § 3509*

■ Garcia asserts that 18 U.S.C. § 3509 differs in several respects from the requirements set forth in *Craig* and argues that "[a]pplication of any of the differences contrary to the specific holding of *Craig* would render the statute unconstitutional." Garcia argues that because the statute says "if the court finds that the child is unable to testify *in open court* in the presence of the defendant ..." (emphasis added), the statute adds a factor which was specifically excluded in *Craig.* Garcia states "[i]n *Craig*, the court wrote that to protect the child from courtroom trauma the child could testify in less intimidating surroundings with the defendant present without violating his right to confrontation."

Given that 18 U.S.C. § 3509 was enacted after the Court issued its decision in *Craig*, we find it far more likely that Congress intended that clause to be interpreted as codifying the requirement in *Craig* that the child be unable to testify in open court *due* to the presence of the defendant. Furthermore, the district court in this case explicitly recognized that if Jane was traumatized only by the courtroom surroundings, and not by the defendant's presence, it could take steps to ameliorate her trauma short of removing her from the defendant's presence. Accord-

ingly, it is clear that the district court did not misapply that clause of the Child Victims' and Child Witnesses' Rights statute in contravention of the Supreme Court's holding in *Craig.*

■ Garcia also asserts that the statute is not clear on how much emotional trauma the child must suffer to justify the use of closed circuit television. The Supreme Court in *Craig* declined to specify the amount of emotional distress required, holding only that it must be more than *de minimis. Craig,* 497 U.S. at 856, 110 S.Ct. at 3169. The Supreme Court stated that it need not decide the minimum showing required because the statute at issue in *Craig*, which required a showing that the child "will suffer 'serious emotional distress such that the child cannot reasonably communicate,' clearly ... [met] constitutional standards." *Id.* (citation omitted).

Title 18 U.S.C. § 3509 requires that the court find "the child is unable to testify in open court in the presence of the defendant" before ordering testimony via closed-circuit television. This required finding is akin to the statute upheld in *Craig* which required that the child's emotional distress be such that he "cannot reasonably communicate." Accordingly, we find that the language in the Child Victims' and Child Witnesses' Rights statute is consistent with the standard approved in *Craig.*

### 2. *Sufficiency of the District Court's Findings*

■ After conducting hearings pursuant to *Craig* and the Child Victims' and Witnesses' Rights statute, the district court granted the government's motion to allow Jane to testify at trial via two-way closed circuit television. The district court concluded that the evidence presented at the hearings supported "a finding that [Jane Doe] isn't able to testify in open court because of fear of the defendant to the extent that her testimony would not be open, complete, and substantially helpful to the jury." The Court also concluded "that based on the expert testimony offered by Dr. Rozensweig, and further supported to some degree by Delphine Clashin, [ ] there is a substantial likelihood that [Jane]

would suffer emotional trauma from testifying in open court in the presence of the defendant." [1]

◼ Garcia argues that the district court relied on improper testimony in reaching this conclusion. Garcia contends that because Dr. Rozensweig had not met with Jane prior to testifying, his testimony was not case-specific as is required by *Craig.*. Although Dr. Rozensweig testified in response to hypothetical questions involving a child meeting Jane's description, he did not meet with Jane prior to testifying. Had the district court relied solely on Dr. Rozensweig's testimony in making its finding regarding emotional trauma, that would have violated the requirement in *Craig* that such findings be case-specific.

However, it was not error for the district court to consider Dr. Rozensweig's general testimony about the trauma a child may experience from testifying in court in a defendant's presence. Hearing an expert's general testimony on this subject is not prohibited by *Craig,* so long as the testimony is not the sole basis for finding that an individual child would suffer emotional trauma from testifying in the presence of a defendant. *Cf. Spigarolo v. Meachum,* 934 F.2d 19, 21, 23 (2d Cir.1991) (taking into consideration the testimony of an expert who never met with the child victims in holding that the lower court met the *Craig* requirement of making an individualized finding of necessity).

◼ The district court also relied on the expert testimony of Delphine Clashin, who did meet with Jane. Garcia argues that she was not a qualified expert, so the district court's reliance on her "testimony to any degree is unfounded." The district court ruled that Ms. Clashin was sufficiently qualified to give her opinion of whether there was a substantial likelihood that Jane would suffer emotional trauma from testifying in the courtroom in the presence of the defendant.

"The determination whether an expert witness has sufficient qualifications to testify is a matter within the district court's discretion." *United States v. Little,* 753 F.2d 1420, 1445 (9th Cir.1984). The district court did not abuse its discretion by allowing Ms. Clashin to testify as an expert witness.

Rule 702 of the Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Delphine Clashin is a children's mental health specialist at the Chinle Indian Health Services Hospital. Ms. Clashin admitted during cross-examination that she was not an expert on the trauma a child would face from testifying in court or testifying on a two-way closed circuit TV. She stated that she had glanced through a book, "The Battered Child," on the subject. Although Ms. Clashin is not a psychologist, she has an M.A. in counseling psychology from Wesleyan graduate school. She had been a counselor for the Navajo tribe for eight years and had been working for the past year as a children's mental health specialist when she testified. Ms. Clashin had counseled approximately forty sexually abused children within the year prior to her testimony.

◼ Garcia argues that Ms. Clashin's admission that she was not an expert in the areas of child testimony and closed circuit television, and that she had glanced through a book on the subject, indicated that she had no specialized knowledge or expertise that could assist the court. Although Ms. Clashin had no particularized expertise on the subject of child testimony through closed circuit television, she had considerable experience

---

1. It is implicit in the district court's finding that the resulting emotional trauma would also prevent the witness from giving meaningful testimony. The court's finding tracks the statute which makes a finding of emotional trauma relevant only if "the child is unable to testify" due to trauma. The district court correctly concluded that the words "unable to testify" do not mean

that the child must be traumatized to the extent of being unable to utter any responses to questions whatsoever. Rather, as was the case with the child witness in *Craig,* the child's emotional trauma must be such that he or she "cannot reasonably communicate" in the defendant's presence.

working with the Navajo tribe and with sexually abused children as a children's mental health specialist. As the district court correctly noted, Ms. Clashin's lack of particularized expertise goes to the weight accorded her testimony, not to the admissibility of her opinion as an expert. *Little,* 753 F.2d at 1445.[2]

Garcia's contention that "reliance on Ms. Clashin's testimony to any degree is unfounded" lacks merit. Ms. Clashin's experience treating sexually abused children in her capacity as a children's mental health specialist is sufficient to qualify her to give her opinion on the likelihood that Jane would suffer emotional trauma from testifying in court in the defendant's presence.

■ We find that the background information provided by Dr. Rozensweig, along with Ms. Clashin's testimony regarding her observations of Jane, provided a sufficient basis for the district court to conclude that there was a substantial likelihood that Jane would suffer emotional trauma to the extent that she would be unable to reasonably communicate in court in the defendant's presence.[3] Garcia's Sixth Amendment right to confrontation was not violated by the district court's decision to allow Jane to testify via two-way closed circuit television. The district court's findings were sufficient to authorize the use of that procedure.

B. *Lesser Included Offense Jury Instruction*

■ Garcia was charged with four counts of aggravated sexual abuse of a child. The district court instructed the jury regarding the elements of aggravated sexual abuse, 18 U.S.C. § 2241(c). Garcia requested that the district court also instruct the jury regarding the offense of abusive sexual contact, 18

U.S.C. § 2244, arguing that abusive sexual contact is a lesser-included offense of aggravated sexual abuse. A defendant is entitled to a lesser-included offense instruction if "'the offense on which the instruction is sought is a lesser-included offense in the offense charged, and ... the jury could rationally conclude that the defendant was guilty of the lesser but not the greater offense.'" *United States v. Torres,* 937 F.2d 1469, 1476 (9th Cir.1991) (quoting *United States v. Crutchfield,* 547 F.2d 496, 500 (9th Cir.1977)), *cert. denied,* —— U.S. ——, 112 S.Ct. 886, 116 L.Ed.2d 789 (1992). The district court refused to give the requested instruction, finding that abusive sexual contact is not a lesser-included offense of aggravated sexual abuse. A district court's refusal to give an instruction on a lesser-included charge is reviewed *de novo. United States v. Sneezer,* 900 F.2d 177, 178 (9th Cir.1990).

Garcia argues that the district court erred in refusing to give his requested instruction. He relies on a decision by the Eighth Circuit holding that abusive sexual contact is a lesser-included offense of aggravated sexual abuse. *United States v. Demarrias,* 876 F.2d 674, 676 (8th Cir.1989). However, Garcia's argument is precluded by a Ninth Circuit decision reaching the opposite conclusion of the *Demarrias* court. *See Torres,* 937 F.2d at 1477–78.

One offense is a lesser included offense of another if "the elements of the lesser offense are a subset of the elements of the charged offense. Where the lesser offense requires an element not required for the greater offense, no instruction is to be given...." *Schmuck v. United States,* 489 U.S. 705, 716, 109 S.Ct. 1443, 1450, 103 L.Ed.2d 734 (1989). In *Torres,* we held that one of the elements

---

**2.** Garcia cites several child sexual abuse cases in which experts in psychology or psychiatry testified about the potential emotional harm they believed the children victims would suffer from testifying in open court. *See, e.g., Spigarolo v. Meacham,* 934 F.2d 19 (2d Cir.1991); *Hardy v. Wigginton,* 922 F.2d 294 (6th Cir.1990); *Vigil v. Tansy,* 917 F.2d 1277 (10th Cir.1990), *cert. denied,* 498 U.S. 1100, 111 S.Ct. 995, 112 L.Ed.2d 1078 (1991). The use of alternative procedures to in-court testimony was upheld on appeal in all of these cases. In none of these cases is there

any indication that the expert witnesses had particular expertise on the subject of the trauma children face from testifying or from testifying through the use of alternative procedures.

**3.** Since we uphold the use of two-way closed circuit television in this case on the basis of emotional trauma, we need not consider whether Jane's fear and the district court's findings regarding that fear provided a sufficient independent basis for the district court's decision.

of abusive sexual contact is specific intent. However, specific intent is not one of the elements of aggravated sexual abuse where the abuse charged is penile as opposed to digital penetration. We concluded that abusive sexual contact in this context is not a lesser-included offense of aggravated sexual abuse. *Torres,* 937 F.2d at 1477–78. Accordingly, we uphold the district court's refusal to give Garcia's requested instruction regarding abusive sexual contact.

**AFFIRMED.**