56 F.3d 74
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Johnny HARRIS, Jr., Defendant-Appellant.
 No. 94-50457.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 1, 1995.
Decided May 24, 1995.
 
 1
 Before: BEEZER and TROTT, Circuit Judges, and BURNS, Senior District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Defendant Harris appeals his conviction and sentence. Harris asserts the district court erred when it denied his motion for judgment on acquittal pursuant to Fed. R. Crim. P. 29 because no sufficient basis existed for the jury to convict him. Harris also asserts the district court erred when it permitted prejudicial testimony relating to Harris's gang affiliation. Harris further contends the district court incorrectly applied the guidelines when it imposed a five-level enhancement under U.S.S.G. Sec. 2B3.1(b)(2)(C) for brandishing, displaying, or possessing a firearm.
 
 
 4
 On January 27, 1994, Harris was convicted by a jury after a two-day trial on one count for armed bank robbery in violation of 18 U.S.C. Sec. 2113(a) and (d) and was sentenced to 121 months imprisonment to be followed by 3 months supervised release.
 
 SUFFICIENCY OF THE EVIDENCE FOR CONVICTION
 
 5
 We review de novo challenges to the sufficiency of the evidence. United States v. Lessard, 17 F.3d 303, 304 (9th Cir. 1994).
 
 
 6
 Sufficient evidence to support a conviction exists if any rational trier of fact, after viewing the evidence in the light most favorable to the government, could conclude the evidence was adequate to prove defendant guilty of each element of the crime beyond a reasonable doubt. United States v. Barbosa, 906 F.2d 1366, 1368 (9th Cir.), cert. denied, 498 U.S. 961 (1990). See also United States v. Hernandez, 876 F.2d 774, 777 (9th Cir.), cert. denied, 493 U.S. 863 (1989). A motion for judgment of acquittal should be granted only in "exceptional circumstances in which the evidence weighs heavily against the verdict." United States v. Hsieh Hui Mei Chen, 754 F.2d 817, 821 (9th Cir.), cert. denied, 471 U.S. 1139 (1985).
 
 
 7
 Harris asserts the government failed to establish his identity as one of the two men who robbed the First Professional Bank in Pasadena, California, and, therefore, the evidence against him was insufficient to sustain the jury's verdict. We disagree.
 
 
 8
 Several witnesses identified Harris as one of the bank robbers from a photospread and during a live lineup. At trial, four witnesses identified Harris as one of the bank robbers. The jury also had the opportunity to view a surveillance photograph of the robbers taken during commission of the crime. Although both Harris and Adonis Towles, who had already confessed to being one of the robbers, testified that Harris was not the second bank robber, "[t]he decision whether to believe a witness is within the province of the jury." United States v. Shirley, 884 F.2d 1130, 1134 (9th Cir. 1989).
 
 
 9
 In light of the above, we conclude the government presented sufficient evidence for a rational jury to find that Harris was one of the bank robbers; therefore, the district court did not err when it denied Harris's motion for judgment of acquittal.
 
 
 10
 ADMISSION OF TESTIMONY RELATING TO GANG AFFILIATION
 
 
 11
 We review a district court's evidentiary rulings for abuse of discretion. United States v. Blaylock, 20 F.3d 1458, 1462 (9th Cir. 1994). The district court has "sound discretion" to determine whether evidence is relevant pursuant to Fed. R. Evid. 401 and whether the probative value of the evidence substantially outweighs the danger of unfair prejudice to a defendant pursuant to Fed. R. Evid. 403. United States v. Gilley, 836 F.2d 1206, 1213 (9th Cir. 1988). The district court's ruling must be clearly in error to constitute an abuse of discretion. United States v. Brooke, 4 F.3d 1480, 1487 (9th Cir. 1993).
 
 
 12
 Harris contends he was denied a fair trial because the jury was unduly prejudiced by testimony regarding Harris's alleged gang affiliation. Although Harris apparently concedes the relevance of the gang affiliation testimony, he asserts the district court erred when it admitted the testimony because the probative value did not substantially outweigh the danger of unfair prejudice.
 
 
 13
 The government is not permitted to connect a defendant "to a group engaged in criminal activity when it serves no purpose" nor can a defendant's guilt be proven by merely associating him with unsavory characters. United States v. Dickens, 775 F.2d 1056, 1058 (9th Cir. 1985). Testimony regarding gang affiliation is admissible, however, on the issue of bias. United States v. Abel, 469 U.S. 45, 49 (1984). See also United States v. Santiago, 46 F.3d 885, 888-90 (9th Cir. 1995). Accord, United States v. Keys, 899 F.2d 983, 987 (10th Cir.), cert. denied, 498 U.S. 858 (1990).
 
 
 14
 In United States v. Abel, testimony relating to gang membership of both a witness and defendant was elicited during cross-examination to demonstrate the witness's bias and motive to commit perjury. 469 U.S. at 49. The Supreme Court noted that evidence of the possible bias of a witness is relevant because "[a] successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury...." Id. at 51. The Court held the testimony in this instance was sufficiently probative of the witness's possible bias toward defendant to warrant its admission. Id.
 
 
 15
 In contrast, we held in United States v. Dickens that testimony relating to defendant's affiliation with a group called "the mob" was sufficiently prejudicial to undermine the fairness of the trial because the testimony was elicited from defendant himself during cross-examination for the sole purpose of impeachment and because the case rested solely on the credibility of witnesses. 775 F.2d at 1059. In Abel, the court allowed counsel to question a witness regarding the gang affiliation of the witness and the defendant because "the witness ... was only a witness and not the defendant" and because the testimony was elicited for the purpose of showing the witness's bias in favor of defendant. 469 U.S. at 52-53. In Dickens, "defendant's bias in his own behalf was self-evident"; i.e., cross-examination of defendant about his gang affiliation was pointless for the purpose of illustrating his bias toward himself. 775 F.2d at 1059.
 
 
 16
 In the case before us, Harris filed a motion in limine to prohibit the government from eliciting testimony regarding Harris's gang affiliation. Initially the court granted Harris's motion; however, at the close of the government's case, the government asked the court to reconsider defendant's motion because Towles was scheduled to testify on behalf of Harris and Harris's involvement in a gang was probative of Towles's willingness to lie for Harris to avoid gang reprisals.[1] The government also asserted Harris's gang affiliation was pertinent to identification of Harris as one of the robbers in light of Towles's statements after his arrest that his co-robber was affiliated with the Lane Bloods. The district court, exercising its "great latitude in the admissibility of evidence," United States v. Gilley, 836 F.2d at 1213, found the testimony was relevant for the purposes of impeachment and identification. The court further found the probative value of Harris's affiliation with a gang substantially outweighed the danger of unfair prejudice.
 
 
 17
 "We reverse for nonconstitutional error only if it was more probable than not that the error affected the verdict." United States v. McAllister, 747 F.2d 1273, 1277 (9th Cir. 1984), cert. denied, 474 U.S. 829 (1985). Even if the district court's ruling were erroneous, it was harmless error because the evidence against Harris, which included four eyewitnesses who identified him as one of the bank robbers and a surveillance photograph taken during commission of the crime, was overwhelming. See United States v. Bishop, 1 F.3d 910, 911 (9th Cir. 1993) (admission of prejudicial evidence was harmless because case against defendant was overwhelming). We have, therefore, no reason to suspect the jury shaped its verdict based on the prejudice that may have been created by hearing about Harris's present or past affiliation with a gang. As we concluded in Bishop, "[w]e are confident that the verdict would have been the same" in the absence of the prejudicial evidence. Id.
 
 
 18
 ENHANCEMENT OF SENTENCE PURSUANT TO U.S.S.G. Sec. 2B3.1(b)(2)
 
 
 19
 We review de novo the district court's application of the guidelines. United States v. Buenrostro-Torres, 24 F.3d 1173, 1174 (9th Cir. 1994). The district court's factual findings in the sentencing phase are reviewed for clear error. Id. See also United States v. Chapnick, 963 F.2d 224, 226 (9th Cir. 1992). A district court's conclusion that a defendant possessed a firearm during the commission of an offense is reviewed for clear error. United States v. Heldberg, 907 F.2d 91, 93 (9th Cir. 1990).
 
 
 20
 Harris asserts the district court erroneously enhanced his offense level under the guidelines by five levels for brandishing, displaying or possessing a firearm pursuant to Sec. 2B3.1(b)(2)(c). Harris contends the government did not meet its burden of proving by a preponderance of the evidence the facts necessary to establish that the weapon Harris held during the robbery was a firearm. See United States v. Young, 33 F.3d 31, 32 (9th Cir. 1994). The court, therefore, should have imposed a three-level enhancement under Sec. 2B3.1(b)(2)(E) for brandishing, displaying, or possessing a dangerous weapon.
 
 
 21
 A firearm is defined in Sec. 1B1.1, comment. (n.1(e)), as:
 
 
 22
 (i) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (ii) the frame or receiver of any such weapon; (iii) any firearm muffler or silencer; or (iv) any destructive device. A weapon, commonly known as a 'BB' or pellet gun, that uses air or carbon dioxide pressure to expel a projectile is a dangerous weapon but not a firearm.
 
 
 23
 At sentencing, Michael Santorelli, a bank employee who was present during the robbery, testified that he saw Harris pull a gun and that he believed the gun was capable of shooting a bullet. Harris argues that Santorelli's testimony was meaningless because he was not a gun expert; however, we find Santorelli's lack of status as a gun expert is not sufficient to make the district court's factual finding clearly erroneous.
 
 
 24
 Several witnesses testified at trial that they saw a gun in Harris's possession. The presentence report indicated Harris pulled out a pistol and, after producing a police scanner, yelled "If I hear the bank's address, you'll all die." Witnesses also testified that Harris ordered everyone into the vault after he and Towles obtained the money; he then told them to lie down and said he was not afraid to kill them if they came out. The logical inference of Harris's statements is that the gun could expel a bullet. The behavior of those in the bank corroborates the witnesses' testimony that they believed Harris had a gun because of what they saw and because of Harris's threats.
 
 
 25
 Harris argues, however, that none of the witnesses testified they saw him fire the gun or knew whether the gun was capable of being fired. We rejected essentially the same argument in United States v. Bernard Lee Harris, in which we noted a statutory definition of firearm substantially similar to the definition found in Sec. 1B1.1 did "not require a weapon be operable." 792 F.2d 866, 868 (9th Cir. 1986) (referring to the definition of firearm found in 18 U.S.C. Sec. 924(c)).
 
 
 26
 Harris further asserts the government could not prove by a preponderance of the evidence that he had a firearm rather than some other weapon because, inter alia, the government did not produce the gun. Harris cites to United States v. Burnett in support of his argument. 16 F.3d 358 (9th Cir. 1994). In Burnett, however, the police actually bolstered the defendant's arguments because they were able to identify the gun as a starter pistol that was incapable of acting as a firearm. In any event, Harris does not assert he possessed a starter pistol, a BB gun, a toy gun, or any other variety of gun that was incapable of expelling a projectile "by action of an explosive."
 
 
 27
 Before sentencing, the district court heard oral argument regarding the enhancement issue on three separate occasions. The court found the government met its burden of proving "that it is more likely true, that it was a gun than it was not a gun -- and when I say 'a gun,' I am assuming a gun that is capable of expelling a projectile." The witnesses' testimony at trial and at sentencing, Harris's threats during the robbery, and the conduct of the persons in the bank at the time of the robbery support the district court's conclusion.
 
 
 28
 Viewing the evidence as a whole, we find the district court did not clearly err when it found that Harris brandished, displayed, and/or possessed a firearm during the robbery; therefore, the district court did not misapply the guidelines when it enhanced Harris's offense level pursuant to
 
 Conclusion
 
 29
 For the foregoing reasons, we AFFIRM Harris's conviction and sentence.
 
 
 
 *
 The Honorable James M. Burns, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Towles's mother also lived in an area controlled by the Pasadena Denver Lane Bloods