77 F.3d 491
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kirk JONES, Defendant-Appellant.
 No. 95-50119.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 6, 1996.
Decided Feb. 16, 1996.
 
 Before: POOLE, WIGGINS, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Kirk Lamont Jones appeals his conviction on one count of distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1). He contends that the district court erred in (1) limiting his cross-examination of the government's confidential informant; (2) permitting the government's cross-examination of Jones regarding his prior arrest for possession of cocaine; and (3) excluding the expert opinion testimony of a proposed defense expert. For the following reasons, we AFFIRM the district court.
 
 FACTUAL BACKGROUND
 
 3
 Jones' conviction for distribution of cocaine base arose out of his sale of eight ounces of hard cocaine on January 31, 1994 to Paul Lartigue, a government informant. In March 1993, Lartigue pleaded guilty to a drug conspiracy count in connection with a Tennessee drug conspiracy and agreed to cooperate with the government in exchange for dismissal of two counts of money laundering, recommendation of a downward departure for acceptance of responsibility, and the potential recommendation of a departure from the Guidelines minimum due to Lartigue's substantial assistance. According to the plea agreement, Lartigue faced a minimum sentence of twenty years and a maximum sentence of life imprisonment.
 
 
 4
 At trial, Jones and Lartigue gave differing accounts of the events that led up to the cocaine sale; Jones did not dispute the cocaine sale, but relied upon a defense of entrapment, testifying that he sold the cocaine to Lartigue in order to get Lartigue to stop badgering him. Thus, the credibility of Jones and Lartigue was an essential issue at trial.
 
 
 5
 The impeachment of both Lartigue and Jones was the subject of several rulings by the district court both prior to and during trial. Prior to trial, the court ruled that Jones could not cross-examine Lartigue regarding two prior felony arrests relating to possession of cocaine--an arrest in September, 1987 where Lartigue had a large amount of cocaine and $345,000 in cash in his possession and a subsequent arrest (apparently in 1988) where Lartigue possessed two kilograms of cocaine, $241,000, and firearms.[1]
 
 
 6
 During trial, the court further ruled that Jones could not impeach Lartigue by cross-examining him with regard to (1) boasts Lartigue made to a Gardena police officer when arrested in April, 1987 that he was a cocaine dealer, (2) Lartigue's attempted purchase of a half kilogram of cocaine in April or May of 1993 while he was cooperating with the F.B.I., and (3) the details of the criminal conduct underlying the Tennessee conviction.[2]
 
 
 7
 During trial, the district court also permitted cross-examination of Jones regarding his prior arrest for possession of cocaine in February 1993. Jones testified that he told Lartigue that he did not "mess around" with cocaine. He also testified on cross-examination that he never used, possessed or sold cocaine prior to his sale to Lartigue. The government then sought to impeach Jones by questioning him regarding the 1993 arrest for possession of cocaine; the district court permitted the impeachment.
 
 
 8
 Finally, Jones sought to introduce the expert testimony of Paul Freeman, an audio engineer, who records, edits and produces music and dialogue.[3] The district court ruled that Freeman was not qualified to give an expert opinion regarding whether the tapes had been edited because he did not have any training in forensic analysis of tapes and was not familiar with the scientific literature in the field. Moreover, the court found that Freeman's opinion would not aid the jury because there was no foundational basis for the opinion.
 
 
 9
 Jones appeals the above rulings of the district court.
 
 DISCUSSION
 I. STANDARD OF REVIEW
 
 10
 We review the district court's limitation on the extent of the cross-examination for an abuse of discretion. U.S. v. Guthrie, 931 F.2d 564, 568 (9th Cir.1991). " 'The trial court does not abuse its discretion as long as the jury receives sufficient information to appraise the biases and motivations of the witness.' " Id. (quoting U.S. v. Feldman, 788 F.2d 544, 554 (9th Cir.1986), cert. denied, 479 U.S. 1067 (1987)).
 
 
 11
 In addition, the trial court's decision to exclude cross-examination into specific instances that are allegedly probative of truthfulness or untruthfulness under Fed.R.Evid. 608(b) is reviewed for abuse of discretion. U.S. v. McCoy, 23 F.3d 216, 217 (9th Cir.1994); U.S. v. Dickens, 775 F.2d 1056, 1058 (9th Cir.1985).
 
 
 12
 Lastly, we review the trial court's decision to admit or exclude expert testimony for abuse of discretion. U.S. v. Rahm, 993 F.2d 1405, 1409 (9th Cir.1993).
 
 
 13
 II. CROSS-EXAMINATION OF THE GOVERNMENT INFORMANT
 
 
 14
 First, Jones argues that Lartigue's boasts of being a drug dealer when arrested in 1987 were admissible under Fed.R.Evid. 608(b). Jones contends that the boasts evidenced Lartigue's untruthfulness when contrasted with his statement 20 months later to the probation department (in connection with a different arrest) that he knew nothing about the cocaine involved in that conviction.
 
 
 15
 Extrinsic evidence of specific instances of misconduct is not admissible to attack a witness' credibility. U.S. v. Noti, 731 F.2d 610, 612 (9th Cir.1984). However, under Fed.R.Evid. 608(b) the court has the discretion to permit cross-examination into specific instances of a witness' conduct if the instances are probative of the truthfulness or untruthfulness of the witness. Fed.R.Evid. 608(b); Dickens, 775 F.2d at 1058 ("Fed.R.Evid. 608(b) controls the extent of cross-examination, allowing examination into 'specific instances' of a witness' conduct if probative of the witness' truthfulness or untruthfulness.").
 
 
 16
 We find that the court did not abuse its discretion in holding that (1) the two statements were insufficiently close in time to be probative of Lartigue's truthfulness or untruthfulness and (2) that the boasts of being a drug dealer were not specifically contradicted by Lartigue's statement in the subsequent probation interview that he knew nothing about the cocaine at issue in that case.[4]
 
 
 17
 Second, Jones argues that the details of Lartigue's two arrests involving cocaine were admissible to show Lartigue's bias because these arrests would be used to calculate Lartigue's sentence under the Sentencing Guidelines. Where counsel seeks to explore a witness' bias on cross-examination--rather than his character for truthfulness--Rule 608(b) is not controlling. U.S. v. Ray, 731 F.2d 1361, 1364 (9th Cir.1984) ("Rule 608(b) does not bar introduction of evidence to show that the witness is biased. It regulates only the admissibility of evidence offered to prove the truthful or untruthful character of a witness."). Moreover,
 
 
 18
 "... when the case against the defendant turns on the credibility of a witness, the defendant has broad cross examination rights." U.S. v. Ray, 731 F.2d 1361, 1364 (9th Cir.1984). We cannot overemphasize the importance of allowing full and fair cross-examination of government witnesses whose testimony is important to the outcome of the case.... Full disclosure of all relevant information concerning their past record and activities through cross-examination is indisputably in the interests of justice.
 
 
 19
 U.S. v. Brooke, 4 F.3d 1480, 1489 (9th Cir.1993). Nevertheless, the district court possesses " 'wide latitude' to limit defense counsel's questioning of a witness without violating a defendant's Sixth Amendment rights." Carriger v. Lewis, 971 F.2d 329, 332-33 (9th Cir.) (citation omitted), cert. denied, 113 S.Ct. 1600 (1993).
 
 
 20
 Here, the district court held that it was Lartigue's understanding of the sentence he was facing that was probative of Lartigue's bias, not the Sentencing Guidelines calculations or the details of Lartigue's prior arrests. The district court was correct. With regard to a cooperating witness' bias, " 'what tells ... is not the actual existence of a deal but the witness' belief or disbelief that such a deal exists.' " U.S. v. Mayans, 17 F.3d 1174, 1184 (9th Cir.1994) (internal citations omitted) (trial court abused its discretion in failing to permit cross-examination regarding witnesses' understanding of terms of plea agreement). Jones cross-examined Lartigue extensively regarding the terms of his plea agreement and the sentence that he was facing--20 years to life. Jones also cross-examined Lartigue extensively regarding his understanding of the sentence he would receive in exchange for his cooperation with the government. It is Lartigue's understanding of how the sentence is calculated.[5]
 
 
 21
 Third, Jones claims that the details of the arrests demonstrate that Lartigue was a "drug kingpin" rather than a "small fry," which showed the extent of Lartigue's bias and motive to testify against Jones in exchange for a reduced sentence. We agree with the district court that the details of Lartigue's arrests are probative of his general credibility and character, not of his bias. Lartigue agreed to cooperate with the government in exchange for a reduced plea in the Tennessee case; his cooperation had nothing to do with his prior arrests. See McCoy, 23 F.3d at 217 (exclusion of evidence of informant's unauthorized drug deals not an abuse of discretion because evidence did not go to bias of witness but rather to his general credibility; defendant did not show that the government was aware of drug activity and agreed to overlook it in return for cooperation).[6] Moreover, with regard to Lartigue's general credibility, specific instances of misconduct are not admissible to impeach a witness unless the instances are (1) convictions (Fed.R.Evid. 609) or (2) probative of truthfulness or untruthfulness (Fed.R.Evid. 608(b))--neither of which is applicable here. See Dickens, 775 F.2d at 1058 (evidence of association with mob not admissible under 609 or 608(b) and thus not admissible for credibility impeachment purposes).
 
 
 22
 Fourth, Jones contends that Lartigue's attempted purchase of cocaine in April, 1993 was probative of Lartigue's bias and motivation in testifying. We disagree. We do not believe the district court abused its discretion in holding that the evidence of Lartigue's unauthorized attempt to purchase drugs was not probative of his bias since Jones did not show that the government knew of the attempted purchase and offered to forego prosecution in exchange for his cooperation. See McCoy, 23 F.3d at 217; cf. Burr v. Sullivan, 618 F.2d 583 (9th Cir.1986) (possible bias of two accomplices in arson case apparent where accomplices admitted to the commission 48 and 52 burglaries and were under juvenile court supervision due to those offenses when testifying against defendant).[7] Thus, the attempted purchase was simply evidence of Lartigue's general credibility and as such governed by Fed.R.Evid. 608 and 609. See McCoy, 23 F.3d at 217; Dickens, 775 F.2d at 1056.
 
 
 23
 Lartigue, however, further argues the attempted purchase was admissible under Fed.R.Evid. 608(b), as showing Lartigue's character for untruthfulness because at the time of the purchase he was working as a government informant and had agreed not to break any laws. Although it is arguable that the 1993 drug purchase was to some degree probative of Lartigue's truthfulness, in that he failed to abide by his agreement to follow the law, we agree with the district court that the incident is better viewed as probative of his general character, and as such not admissible under 608(b). See McCoy, 23 F.3d at 217 (evidence of informant's unauthorized drug deals probative of lack of credibility and thus not erroneously excluded).[8]
 
 
 24
 Lastly, Lartigue contends that the court erred in failing to permit broad cross-examination into the details of the Tennessee drug conspiracy in order to demonstrate the extent of Lartigue's bias. We find that the cross-examination regarding Lartigue's 1989 drug conviction was sufficient to expose Lartigue's biases to the jury;[9] Jones was not entitled to cross-examine Lartigue with regard to the details of the Tennessee drug conspiracy. See U.S. v. Garcia, 988 F.2d 965, 969 (9th Cir.1993) (no error where defendant questioned immunized witness regarding fact that he was involved in a murder investigation and did not want the investigation pursued, but was not permitted to cross-examine the witness regarding his actual involvement in the events surrounding the murder).
 
 
 25
 For the above reasons, we affirm the challenged rulings regarding Jones' cross-examination of Lartigue.
 
 III. CROSS-EXAMINATION OF JONES
 
 26
 Jones also contends that the court below erred in permitting the government to cross-examine him regarding his prior arrest for possession of cocaine in February, 1993. Jones argues that the evidence of his prior arrest was not admissible under Fed.R.Evid. 404(b). The government, however, offered this evidence both as impeachment under Rule 608(b) and under Rule 404(b). We do not address the admissibility under 404(b) because the cross-examination was properly permitted as impeachment.
 
 
 27
 A defendant who testifies at his trial may be cross-examined as to all matters he reasonably puts in dispute during direct examination. U.S. v. Mehrmanesh, 682 F.2d 1303, 1309 (9th Cir.1982) (citing U.S. v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir.1981)). Moreover, under Rule 608(b) specific instances of misconduct may be inquired into in order to impeach a witness if such instances are probative of the witness' truthfulness and the probativeness outweighs the prejudicial effect. Id. Here, Jones' testimony directly put into dispute whether he had ever possessed, used or sold cocaine prior to his sale to Lartigue. The district court correctly ruled that the government could question him regarding the 1993 possession under Rule 608(b) to show his untruthfulness, since the prior possession directly contradicted his statements. See id. (defendant's testimony put into issue the question of whether he had ever dealt in controlled substances; therefore cross-examination into areas such as his prior admission to possession of opium and his discussions of other transactions with a purchaser directly related to the credibility of his testimony).
 
 
 28
 Therefore, we affirm the district court's ruling regarding the cross-examination of Jones.
 
 
 29
 IV. EXCLUSION OF THE OPINION TESTIMONY OF THE DEFENSE EXPERT
 
 
 30
 Lastly, Jones claims that the district court abused its discretion in failing to permit its audio expert to testify that one of the surveillance tapes had two "edits" and two possible "edits." Under Fed.R.Evid. 702 an expert can be qualified to testify because of his or her knowledge, skill, experience, training, or education. Fed.R.Evid. 702; U.S. v. Garcia, 7 F.3d 885, 889 (9th Cir.1993). Here, the court below found that Freeman could not be qualified as an expert in forensic tape analysis and therefore could not testify to the authenticity of the tapes.
 
 
 31
 The district court did not abuse its discretion in so holding. Freeman did not have any formal training in forensic tape analysis, nor was he familiar with recognized texts in the field. Moreover, Freeman's professional experience was in recording and editing music, not in performing analyses of tapes to determine whether the tapes had been edited.[10]
 
 
 32
 For these reasons, we affirm the district court's ruling that Freeman was not qualified to testify as an expert.[11]
 
 CONCLUSION
 
 33
 For the foregoing reasons, we AFFIRM Jones conviction.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 On the other hand, the court ruled that Jones could cross-examine Lartigue with regard to (1) his February 1989 felony conviction for possession of narcotics, (2) his 1993 conviction for conspiracy to distribute cocaine in Tennessee, (3) the terms of his Tennessee plea agreement, (4) his April 1987 arrest for false identification to a peace officer, and (5) his false statement when arrested in 1993 regarding the source of $11,000 in cash
 
 
 [2]
 The court permitted cross-examination on Lartigue's 1989 statement to the probation department that he did not know anything about the cocaine involved in the offense leading to his conviction as probative of Lartigue's truthfulness (since he had pleaded to possession of the cocaine but then denied he knew anything about the cocaine)
 
 
 [3]
 At voir dire, Freeman testified that he had no formal education in audio engineering, electronics, or the authenticity of tapes. Moreover, Freeman testified that he had not reviewed the original tape, he did not know how the copy had been made, he did not know what kind of recording device had been used (such as a voice activation device), and he did not know if the tape had been tampered with or the cause of the "edits."
 
 
 [4]
 Further, the court admitted Lartigue's subsequent statement that he knew nothing about the cocaine involved in his 1988 arrest (and 1989 conviction) as probative of untruthfulness when contrasted with the fact that Lartigue pleaded guilty to possession of cocaine with intent to distribute
 
 
 [5]
 Even if the details were probative of Lartigue's bias, the district court did not abuse its discretion in finding that cross-examination would be unduly prejudicial in light of Lartigue's testimony concerning the sentence he was facing
 
 
 [6]
 It is true that a witness facing charges for a more serious crime may have a greater motivation to lie than a witness facing charges on a lesser crime. Guthrie, 931 F.2d at 568. However, Lartigue was not facing charges on the previous arrests; nor did his plea agreement arise out of or affect those arrests. Thus, the fact that Lartigue may or may not have been a "drug kingpin" would only be probative of his general character and therefore may not be proven by specific instances of conduct. Fed.R.Evid. 608
 
 
 [7]
 We reject Jones' reliance on U.S. v. Ray. In Ray, we held that a defendant should have been permitted to cross-examine an accomplice who turned government witness regarding his involvement in two drug transactions which occurred after the accomplice entered into his plea agreement; we found that the jury could believe that the accomplice's continued drug dealing biased his testimony against the defendant. Ray, 731 F.2d at 1364. There, however, the accomplice's testimony was crucial to proving that defendant had purchased drugs in sufficient quantities to support inference that he intended to distribute them, and so we reasoned the accomplice could easily have shaded testimony concerning amount of drugs purchased by the defendant if he were biased. Id. Here, however, Jones admitted to the cocaine sale and relied upon a defense of entrapment. Jones does not explain why Lartigue would become more likely to be biased against Jones due to the attempted cocaine purchase. We find, therefore, that Lartigue's alleged attempt to purchase cocaine is probative of Lartigue's general credibility, and not of his bias against Jones
 
 
 [8]
 We note that U.S. v. Bernal-Obeso, 989 F.2d 331 (9th Cir.1993), relied upon by Jones, is distinguishable. In Bernal-Obeso, we held that under Rule 608(b) the trial court should have permitted cross-examination of a government informant concerning his alleged lies to the D.E.A. about his prior criminal history. 989 F.2d at 335-36. Here, however, Jones did not proffer any evidence to indicate that Lartigue had lied about his attempted cocaine purchase
 
 
 [9]
 The court permitted cross-examination of Lartigue regarding Lartigue's 1989 drug conviction, the fact that he had been in prison as a result of that conviction, the fact that he did not like prison, the crimes for which he was indicted in the Tennessee drug conspiracy, the offense to which he pleaded guilty, the terms of the plea agreement (including the sentence he was facing and the offenses for which he was indicted), and Lartigue's understanding of what he would receive in exchange for his cooperation with the government
 10 U.S. v. Garcia, 7 F.3d 885 (9th Cir.1993), relied upon by Jones, is distinguishable. There, a child mental health specialist was found to have sufficient experience with the Navajo tribe and with sexually abused children to testify as to the traumatic effect of closed circuit testimony on a sexually abused child. Garcia, 7 F.3d at 885. We did not require that the expert be a specialist on the traumatic effect of closed circuit testimony on children. Here, however, Freeman is not an expert on the analysis of tapes at all--much less an expert on the analysis of the particular type of tape or the equipment used. Rather, his practical expertise is in recording audio music and dialogue.
 
 
 [11]
 We reject Jones' argument that Freeman was qualified to testify as a lay witness under Rule 701 as well. Jones failed to raise this argument below and has failed to demonstrate any plain error resulting from the exclusion of Freeman's testimony