# IN THE COURT OF APPEALS OF IOWA

No. 14-1225
Filed October 14, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JOSE LUIS AGUILAR,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Emmet County, Carl H. Petersen, Judge.


        The defendant challenges his convictions for sexual abuse in the first and second degree.  **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Patricia Reynolds, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General; Kevin Cmelik, Sharon Hall, and Denise A. Timmins, Assistant Attorneys General; Douglas Hansen, County Attorney; and Rosalise Olson, Assistant County Attorney, for appellee.


        Considered by Tabor, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

Following trial to the district court, Jose Aguilar was convicted of sexual abuse in the first degree and sexual abuse in the second degree, in violation of Iowa Code sections 709.1, 709.2, and 709.3(2) (2011), arising out of the defendant's repeated abuse of his girlfriend's then six-year-old child. When viewed in the light most favorable to the State, the evidence showed the defendant's penis penetrated the child's vagina or anus or the defendant's genitalia came into contact with the child's genitalia or anus on three occasions when the defendant was left alone with the child. The evidence also showed the defendant transmitted herpes simplex virus type 2 ("HSV2") to the child. HSV2 is a form of genital herpes, which is a "sexually transmitted infection."

I.

At issue is whether Aguilar's constitutional and statutory rights to confront and cross-examine witnesses were violated when the district court allowed the alleged child victim to testify over closed-circuit television outside the physical presence of the defendant. In its written findings, conclusions, and verdict, the district court set forth the posture of the case and its reasons for allowing the alleged child victim to testify outside the presence of the defendant:

> J.L.M., the alleged victim in this case, then took the stand. She was escorted to the stand by her foster mother, a social worker, and the Emmet County victim/witness coordinator. After approximately ten minutes of attempting to encourage J.L.M. to testify, the Court called a recess as it was clear that J.L.M. was not able to testify in open court before the Defendant. The State moved for protective order for closed circuit testimony of minor child for trial. The Court entertained that motion. The Defendant objected to said motion. The Court sustained the motion for protective order for closed circuit testimony of the minor child. The

Court specifically found that it was necessary to protect the child witness by this procedure. The child was traumatized having to [give] testimony in front of the Defendant, and further, the child witness suffered emotional distress more than nervousness. The Court's conclusion was based upon the fact that this child witness was brought into the courtroom without the presence of the Defendant and was able to answer questions in open court. This child witness had previously given a deposition and was able to communicate without the presence of the Defendant. The Court can only conclude that based upon her reaction to the presence of the Defendant that she was traumatized; that she was suffering emotional distress; and that it was necessary to protect the child witness to sustain the State's motion. Court made said conclusion based upon Iowa Code Section 915.38; *State v. Paulson*, 730 N.W.2d 210 (Iowa Ct. App. 2007); and *State v. Shearon*, 660 N.W.2d 52, 55 (Iowa 2003).

Thereafter, the Court adjourned to the Emmet County jury room where the video camera was prepared. In the jury room included the State's attorneys, counsel, Greg Jones and the Court. The Defendant remained in the courtroom and was able to observe the testimony via closed circuit television. J.L.M. was present in the jury room along with the social worker seated next to her. The Court recessed three different times during J.L.M.'s testimony to allow Mr. Jones to confer with the Defendant.

J.L.M. was asked a series of questions by the Court prior to her testimony. Those included her understanding of what it means to promise something; whether or not she understood that the Defendant was watching her on the video camera; whether she understood the difference between the truth and a lie; whether it was okay to tell a lie; and if she understood she could be punished for telling a lie. She gave appropriate answers to these questions to confirm to the Court that she understood her obligation to tell the truth at this trial. The Court accepted this colloquy as her oath or affirmation to tell the truth.

The right to confront and cross-examine witnesses is protected by the federal and state constitutions. The Sixth Amendment provides "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Iowa Constitution provides for the same. *See* Iowa Const. art. 1, § 10. The text of the federal and state constitutions appear to guarantee the criminally accused the right to face-to-face

confrontation with the witnesses against him. *See Maryland v. Craig*, 497 U.S. 836, 862 (1990) (Scalia, J., dissenting) ("Whatever else it may mean in addition, the defendant's constitutional right 'to be confronted with the witnesses against him' means, always and everywhere, at least what it explicitly says: the right to meet face to face all those who appear and give evidence at trial." (internal marks omitted)); *Coy v. Iowa*, 487 U.S. 1012, 1020 (1988) (holding Iowa statute allowing screen to be placed between child victim and the defendant violated the defendant's right to confrontation and stating "face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult. It is a truism that constitutional protections have costs.").

In *Craig*, 497 U.S. at 849-50, "the Supreme Court . . . clarified that while the Confrontation Clause does express a strong preference for face-to-face confrontation, the latter is not an absolute requirement." *State v. Rogerson*, 855 N.W.2d 495, 499 (Iowa 2014). "This preference for face-to-face confrontation 'must occasionally give way to considerations of public policy and the necessities of the case.'" *Id.* (quoting *Craig*, 497 U.S. at 849.) The *Craig* Court concluded "the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant." *Id.* at 855. "In such cases, the State must prove: (1) that the 'denial of [face-to-face] confrontation is necessary to further an important public policy,' and (2) that 'the

reliability of the testimony is otherwise assured.'" *Rogerson*, 855 N.W.2d at 499 (quoting *Craig*, 497 U.S. at 850). Although the defendant now asserts a claim arising under the Iowa Constitution, the defendant makes no argument that the Iowa Constitution should be interpreted differently than the Federal Constitution. "Where a party raises issues under the Iowa Constitution and the Federal Constitution, but does not suggest a different standard be applied under the Iowa Constitution, we generally apply the federal standard." *See State v. Edouard*, 854 N.W.2d 421, 452 (Iowa 2014).

Consistent with the United States and Iowa Constitutions, the Iowa Code sets forth the procedures to be followed and the findings that must be made prior to allowing a child to testify outside the physical presence of the defendant by closed circuit television:

> Upon its own motion or upon motion of any party, a court may protect a minor, as defined in section 599.1, from trauma caused by testifying in the physical presence of the defendant where it would impair the minor's ability to communicate, by ordering that the testimony of the minor be taken in a room other than the courtroom and be televised by closed-circuit equipment for viewing in the courtroom. However, such an order shall be entered only upon a specific finding by the court that such measures are necessary to protect the minor from trauma.

Iowa Code § 915.38(1). The statutory procedure preserves the right to confrontation while also protecting the alleged child victim from significant emotional trauma. *See Shearon*, 660 N.W.2d at 55.

Aguilar contends his constitutional and statutory rights were violated when the district court granted the State's oral motion for protective order based primarily on the district court's personal observations and without receiving

evidence from witnesses in support of the motion. Error was not preserved. At trial, the defendant objected only on the ground the State failed to prove the required elements. The State does not press the point, however, and argues the case on the merits. We will also address the merits. We review the defendant's constitutional claims de novo. *See State v. Cuevas*, No. 08-1344, 2009 WL 3337606, at *8 (Iowa Ct. App. Oct. 7, 2009). We review the district court's decision to allow the child to testify by closed-circuit television pursuant to Iowa Code section 915.38(1) for the correction of legal error. *See id.* We conclude the district court did not violate the defendant's rights or otherwise err in allowing the testimony over closed-circuit television.

We first note the defendant is correct in his assertion that the *Craig* Court did state "[t]he trial court must hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify." *Craig*, 497 U.S. at 855. We do not, however, interpret the words "hear evidence" exclusively. Instead, we interpret the Court's statement in *Craig* to mean the district court must make findings based on evidence or personal observation regarding "the particular child witness who seeks to testify" rather than generalized notions of potential harm to child victims as a class. It is the particularity that matters.

Our interpretation of *Craig* is consistent with section 915.38. There is nothing in the statute requiring the district court to "hear evidence" rather than rule based on its personal observations. The text of the statute actually supports the contrary inference. The statute allows the motion for protective order to be

made on the court's "own motion." Although the motion in this case was made by the State, this statutory provision allows the district court to take action where, as here, at the time of trial the child witness attempted to but was not able to testify and there was no time to obtain expert witnesses. In such a situation, out of necessity, the district court's ruling on the motion for protective order must be based on its personal observations. In addition, the statute requires only that the district court make "specific findings"; it does not require the district court to hear certain kinds of evidence to the exclusion of its own observations in making those "specific findings."

Even if we were to strictly interpret *Craig* and the relevant statutory provision as requiring something more than the district court's personal observation, the standard has been satisfied here. The defendant understates the information and evidence upon which the district court relied. The district court relied on its personal observations of the alleged child victim over a fairly extended period of time. The district court also relied on its knowledge the alleged child victim was able to testify outside the presence of the defendant during deposition. The district court also relied on its knowledge the child was able to answer questions in open court without the presence of the defendant while preparing during lunch. The child was unable to speak in the presence of the defendant, however. This supports the district court's finding the trauma was associated with the defendant's presence specifically and not merely generalized anxiety related to the trial process. In its written findings, the district court relied on the professional statement of the prosecutor and the agreement of defense

counsel with the professional statement. "Under Iowa law, professional statements are treated as affidavits and the attorney making the statement may be cross-examined regarding the substance of the statement." *Frunzar v. Allied Prop. & Cas. Ins. Co.*, 548 N.W.2d 880, 888 (Iowa 1996); *see also State v. Williams*, 315 N.W.2d 45, 52-53 (Iowa 1982) ("The term 'professional statement' means a statement of fact presented to the court by an attorney in connection with a matter then before such court, verified in effect by the oath of such attorney, and designed or calculated to aid or influence the court in the determination of a given cause or issue."). The professional statement, standing alone, is substantial evidence in support of the district court's findings. The decision to allow the child to testify by closed-circuit television was not in violation of the statute or the defendant's constitutional rights. *See, e.g., State v. Hicks*, No. 13-1912, 2015 WL 1046130, at *5 (Iowa Ct. App. Mar. 11, 2015) (rejecting challenge to findings made pursuant to section 915.38); *Cuevas*, No. 08-1344, 2009 WL 3337606, at *9-10; *State v. Paulson*, No. 06-0141, 2007 WL 461323, at *5-6 (Iowa Ct. App. Feb. 14, 2007); *State v. Bailey*, No. 01-0955, 2002 WL 31308238, at *1-3 (Iowa Ct. App. Oct. 16, 2002); *State v. Mosley*, No. 00-0094, 2001 WL 293221, at *2-4 (Iowa Ct. App. March 28, 2001); *see also State v. Chisholm*, 825 P.2d 147, 155 (Kan. 1992) ("Here, the trial court did not 'hear evidence' in the manner set out in *Coy* and *Craig*. But, the trial court had personally observed the child's inability to testify when confronting the defendant face-to-face and her ability to talk about the incidents when out of the presence of the defendant.")

II.

Also at issue is the sufficiency of the evidence supporting Aguilar's conviction for sexual abuse in the first degree. He contends there is insufficient evidence he transmitted HSV2 to the child and thus insufficient evidence he caused any injury. *See* Iowa Code § 709.2. The child tested positive for HSV2 in November 2012. Following the child's positive test, the authorities continued to investigate the matter. As part of the investigation, the defendant tested positive for HSV2 on October 21, 2013. The trial information was filed on October 29, 2013. The defendant contends because there was no test showing that he was positive for HSV2 in the fall of 2012, the time of the conduct at issue, it is possible that someone else transmitted HSV2 to the child.

We review challenges to the sufficiency of the evidence for correction of errors at law. *See Edouard*, 854 N.W.2d at 431. "In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, courts consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). We will uphold a verdict if it is supported by substantial evidence. *See id.* "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.*

We reject the defendant's challenge to the sufficiency of the evidence. The child testified credibly. She explained Augilar "used his private stuff on me" and circled the corresponding body parts on a diagram. Using demonstrative

aids, the child demonstrated how Aguilar laid behind her in a spooning position. She testified there was skin-to-skin contact between Aguilar's private parts and her butt. Her testimony was corroborated by medical evidence. The child developed severe lesions in her anal and vaginal area, which ultimately were diagnosed as symptoms of HSV2. The State's evidence showed it is highly unlikely for one to contract HSV2 in any manner other than through skin to skin contact. Dr. Mark Hudson, a child abuse pediatrician, who examined the child, testified as follows:

> Q. J.L. testified yesterday that Jose Aguilar put his privates in her bottom or her butt. And, um Jose Aguilar is a carrier of herpes virus—simplex virus type 2. Would that be considered the most likely source of J.L.'s herpes simplex virus? A. Yes.
> Q. Does the fact that the lesions were in the perineum, which you indicate was the back part of the vagina, be consistent with her description of the abuse? A. Yes.

The child victim also displayed fear in the presence of the defendant. When viewed in the light most favorable to the State, we conclude there is substantial evidence the defendant caused the victim to sustain serious injury.

### III.

Aguilar raises a claim of ineffective assistance of counsel. The defendant contends his trial counsel was ineffective by failing to object to the testimony of Kari Anderson, a mental health therapist. Specifically, he contends his trial counsel should have objected to a single statement in which Anderson testified she "diagnosed [the alleged victim] with adjustment disorder with disturbance of mixed emotions and conduct, and . . . a victim of sexual abuse." The defendant

contends the testimony constituted impermissible vouching for the alleged victim's testimony.

To establish his claim for ineffective assistance of counsel, the defendant must establish that his trial counsel failed to perform an essential duty and that this failure resulted in prejudice. *See State v. Westeen*, 591 N.W.2d 203, 207 (Iowa 1999). To establish trial counsel failed to perform an essential duty, Aguilar must establish "the attorney performed below the standard demanded of a reasonably competent attorney." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). The attorney's performance is measured against "prevailing professional norms," and it is presumed the attorney performed competently. *See id.* The ultimate inquiry regarding prejudice is whether counsel's allegedly deficient performance caused a complete "breakdown in the adversary process" such that the convictions are unreliable. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). This requires a showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Collins v. State*, 588 N.W.2d 399, 402 (Iowa 1998) (citation and quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the defendant's trial." *Id.*

We first address the issue of whether counsel breached a duty owed Aguilar. Iowa Rule of Evidence 5.702 permits expert opinion testimony "if . . . specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." "Expert testimony in child sexual abuse cases can be very beneficial . . . in understanding some of the seemingly unusual behavior

child victims tend to display." *State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014). While experts will be allowed to express opinions on matters that explain relevant mental and psychological symptoms present in sexually-abused children, they will not be allowed to render "an opinion on the credibility or truthfulness of a witness." *See id.* "[E]xpert testimony is not admissible merely to bolster credibility." *Id.* at 676. The single statement at issue here is very similar to the one disallowed in *Dudley*. *See id.* at 677 ("To allow an expert witness to testify a child's physical manifestations or symptoms are consistent with sexual abuse trauma or CSAAS allows the expert witness to indirectly vouch that the victim was telling the truth because the expert opines the symptoms are consistent with child abuse."). We need not decide the issue of whether counsel breached a duty owed the defendant by failing to object to this single sentence, however, because the defendant has failed to establish prejudice. *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003) ("A defendant's inability to prove either element is fatal."); *see also State v. Tate*, 710 N.W.2d 237, 240 (Iowa 2006) ("[W]e need not determine whether his trial counsel's performance was deficient before examining the prejudice component of his ineffective-assistance claim.").

Several considerations lead us to conclude the defendant has not established prejudice. "First, it is significant that this was a bench trial, which served to reduce any potential prejudice attendant to the statements. This is generally true because legal training assists the fact finder in a bench trial to remain unaffected by matters that should not influence the determination." *State v. Bonilla*, No. 05-0596, 2006 WL 3313783, at *4 (Iowa Ct. App. Nov. 16, 2006);

*see State v. Matheson*, 684 N.W.2d 243, 244 (Iowa 2004) ("It is true, as the State suggests, that an appellate court is less likely to reverse when improper evidence is introduced in bench trials in which the matter is for a judge's determination rather than for determination by a jury."). Second, the defendant challenges only a single sentence made during the course of a two-day bench trial. It is unlikely this single sentence had any great impact on the court. Third, the evidence of guilt was overwhelming. The district court found the alleged victim credible independent of the mental health therapist's testimony. The victim's testimony was corroborated by medical history evidence otherwise inexplicable in a six-year-old child, including trauma to her anus and vagina and testing positive for HSV2. We conclude the defendant failed to establish there is a reasonable probability the result of the proceeding would have been different. *See Whitsel v. State*, 439 N.W.2d 871, 875 (Iowa 1989) ("Regardless of the appellant's many claims as to ineffective assistance of counsel, we find no prejudice to the appellant because the evidence presented at his trial was overwhelming concerning his guilt."); *see also State v. Carey*, 709 N.W.2d 547, 559 (Iowa 2006) ("The most important factor under the test for prejudice is the strength of the State's case."); *State v. Navarrette*, No. 14-0662, 2015 WL 1817041, at *1-2 (Iowa Ct. App. Apr. 22, 2015) (finding no prejudice caused by prior bad acts testimony where there was overwhelming evidence of sex abuse, including testimony of the victims and medical director of the child protection response center); *State v. Kennedy*, No. 00-2058, 2002 WL 984515, at *5 (Iowa Ct. App.

May 15, 2002) (holding defendant failed to establish prejudice due to prosecutor's comment where there was overwhelming evidence of sex abuse).

IV.

For the foregoing reasons, we affirm the defendant's convictions and sentences.

**AFFIRMED.**

Bower, J., concurs; Tabor, P.J., dissents.

**TABOR, Presiding Judge.** (dissenting)

I respectfully dissent on the Confrontation Clause question. In my view, the district court did not comply with *Maryland v. Craig*, 497 U.S. 836, 855 (1990), when finding it was necessary for J.L.M. to testify by means of closed-circuit television without hearing any evidence to indicate the child would suffer emotional trauma caused by testifying in the physical presence of Aguilar.

*Craig* recognized the State's interest in protecting child witnesses from the trauma of testifying in the physical presence of the defendant. To approve a motion for the child's testimony to be taken outside the courtroom and televised for viewing in the courtroom, the district court must make a specific finding that such measures are necessary to protect the child from trauma. *See* Iowa Code § 915.38(1)(a). For that statutory procedure to pass muster under the Sixth Amendment, it must meet *Craig's* three-part test. *See Craig*, 497 U.S. at 855. First, "[t]he requisite finding of necessity must of course be a case specific one: the trial court must hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify." *Id.* Second, the trial court must find "that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant." *Id.* at 856. Third, "the trial court must find that the emotional distress suffered by the child in the presence of the defendant is more than *de minimis,* i.e., more than 'mere nervousness or excitement or some reluctance to testify.'" *Id.*

The majority recognizes *Craig*'s emphasis on a case-specific finding of necessity, but downgrades the Supreme Court's directive that the finding of necessity be driven by the presentation of evidence. The majority declines to interpret the words "hear evidence" as the exclusive means of reaching the necessity determination and notes that nothing in section 915.38 requires a district court to "hear evidence." In contrast to the majority decision, I read the Supreme Court's phrase "must hear evidence" as requiring the district court to entertain testimony before infringing on the defendant's confrontation right.[1] As far as I can tell, this case marks the first time that an Iowa appellate court has allowed the denial of a defendant's right to face-to-face confrontation without requiring the State to offer any evidence in support of the necessity finding outlined in *Craig*.

*Craig*'s evidentiary requirement is highlighted by the federal response. "After the Supreme Court's decision in *Craig,* Congress enacted 18 U.S.C. § 3509, which provides for alternative procedures to live in-court testimony." *United States v. Garcia*, 7 F.3d 885, 887 (9th Cir. 1993). Section 3509(b)(1)(B)(ii) requires expert testimony to support a finding that the child would suffer emotional trauma from testifying in open court. *Id.* While the majority of state jurisdictions with similar child-witness-protection schemes have concluded that expert testimony is not required to justify use of the statutory

---

[1] I would hold that implicit in our statute is the directive that the district court "must hear evidence" before determining the necessity of the special procedure for the welfare of the particular child witness. *Cf. State v. Hernandez-Lopez*, 639 N.W.2d 226, 239 (Iowa 2002) (interpreting material witness statute as incorporating procedural protections so it comports with constitutional principles).

procedure, (*see State v. Crandall*, 577 A.2d 483, 489 (N.J. 1990) (collecting cases)), most states look to experts or witnesses close to the child to provide opinions concerning the likelihood of trauma from testifying in the physical presence of the defendant. *See State v. Lewis*, 478 S.E.2d 861, 866 (S.C. Ct. App. 1996) (noting many states take a "flexible" approach to *Craig* "whereby a treating or examining expert's testimony is strongly suggested, though is not necessarily a minimum evidentiary requirement").

We have not interpreted our analogous state provision, Iowa Code section 915.38, as requiring expert testimony. *See State v. Paulson*, No. 06–0141, 2007 WL 461323, at *6 (Iowa Ct. App. Feb. 14, 2007) (holding statute did not require "witness have any specified training, experience, or education in order to testify regarding whether the child witness's ability to communicate would be impaired if required to testify in the presence of a defendant"); *see also State v. Mosley,* No. 00–0094, 2001 WL 293221, at *8 (Iowa Ct. App. Mar. 28, 2001) (noting any findings by the district court concerning the *Craig* factors could potentially rely on testimony given by guardian ad litem and the mother of the child witness). But we have not before today dispensed all together with the requirement for evidence documenting the child's likelihood of suffering trauma.

Without disparaging the value of the trial judge's observations regarding the behavior of the child witness in the courtroom, those observations standing alone cannot satisfy the requirement of hearing evidence on the issue of trauma. *Cf. Clinton Nat'l Bank v. City of Camanche*, 251 N.W.2d 248, 251 (Iowa 1977) (noting in property case, "a trial judge has inherent right to view premises for a

better understanding of the testimony, but must not consider his [or her] observations as evidence"). In this case, the district court saw firsthand J.L.M.'s difficulty in communicating in the open courtroom in Aguilar's presence. The court found the unsuccessful attempt to urge the child to testify "demonstrated the severe trauma that she was facing by coming into the courtroom and testifying." The court found the child's trauma was "more than mere nervousness." The court pointed to the child's body language and "her reluctance to even sit down on the witness stand" as showing the "necessary emotional distress to support" the motion to allow her to testify by closed-circuit testimony. The district court applied the correct standard under *Craig* but did so without any evidence beyond its own observations. I believe the language in *Craig* contemplates more than the trial judge acting as the one and only witness on the issue of the child's trauma. In this case, it would have been possible for the court to have held a brief hearing on the motion and to have heard evidence from the child's foster parents, the victim-witness coordinator, a social worker involved with the case, or even the child herself.

In addition, the majority concludes the prosecutor's professional statement provided substantial evidence in support of the district court's findings. After the trial, the prosecutor recounted what she observed in the courtroom when a "tearful" J.L.M. tried to testify in front of Aguilar as compared to the child's confidence in testifying outside of his physical presence. While that professional statement was helpful in explaining the situation precipitating the State's request for the special procedure, it did not satisfy the obligation to hear evidence under

*Craig* for two reasons. First, the court had already ruled on the motion and allowed the defendant's confrontation rights to be impinged before the prosecutor offered the professional statement. Second, the professional statement did not mention the word "trauma," which is the lynchpin of the *Craig* test. *See State v. Bailey*, 01-0955, 2002 WL 31308238, at *2 (Iowa Ct. App. Oct. 16, 2002) (holding sole purpose of *Craig* test was not to determine whether child's ability to testify in court while in the presence of defendant would be impaired, but describing a broader purpose to assess the extent of probable trauma to the child witness).

In conclusion, I respectfully disagree with the majority's reading of *Craig*. This record suggests the State may well have been able to show the necessity for close-circuit testimony by offering evidence of the likelihood of trauma to the child witness. But without that evidence, a denial of face-to-face confrontation requires reversal. *See State v. Rogerson*, 855 N.W.2d 495, 508 (Iowa 2014).